THE WESTERN BOOT & SHOE COMPANY, Appellant, v. B. GANNON, Respondent.

St. Louis Court of Appeals, October 25, 1892.

1. **Landlord and Tenant:** NATURE OF CONTRACT. Whether a contract for letting is a lease, or a mere agreement for a lease, depends upon the intention of the parties, and such intention is to be gleaned from the instrument itself, and the surrounding circumstances.

2. ———: ———. The contract in this case provided for a letting of parts of a building, then in the course of construction, for a term commencing from the completion of the building; and the landlord himself, at the time of the execution thereof, had no title to the premises, but only an agreement for a lease. The tenant, however, on the completion of the building, entered into possession, and the contract did not, in terms, provide for the subsequent execution of any further document. *Held,* that the contract would not be construed to be an agreement for a lease, and that the formal execution of a lease under it would not be decreed.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

*David Goldsmith,* for appellant.

*Lee, McKeighan, Ellis & Priest* and *Gustave L. Stern,* for respondent.

ROMBAUER, P. J.—The only question presented by this record is, whether the plaintiff's petition states a cause of action for equitable relief. The petition is as follows:

"The plaintiff states that it is a corporation; that heretofore it entered into a contract with one Thomas Reyburn, whereby said Reyburn agreed to erect on a certain lot of land on the southeast corner of Nineteenth and Olive streets, in the city of St. Louis and state of Missouri, a five-story brick building, and to lease said premises to the plaintiff for the term of five years, commencing at the time of the completion of said building, and further to give plaintiff the option of renewing said lease; and that it was also agreed that upon the completion of said building said Reyburn should execute to plaintiff a lease of said premises for said term.

"The plaintiff states that heretofore, to-wit, on the second day of September, 1890, it and the defendant made and entered into a contract which was in words and figures as follows, to-wit:

" 'The Western Boot & Shoe Company hereby agrees to lease to B. Gannon the fourth and fifth floors of the building now in process of construction on the southeast corner of Olive and Nineteenth streets, St. Louis, Missouri, for the term of five (5) years, beginning not earlier than November 1, or as soon thereafter as said building has been completed, and the keys to the said fourth and fifth floors are turned over to B. Gannon.

" 'The Western Boot & Shoe Manufacturing Company further agrees to furnish B. Gannon with steam

power sufficient to run all the machinery he may place in said fourth and fifth floors, also all steam heat for the proper heating of said floors, also all water needed for said floors, and all connecting facilities necessary for lighting said floors by electricity.

" 'The Western Boot & Shoe Manufacturing Company further agrees (to be used in connection with them) to furnish B. Gannon with an elevator, which they shall keep in good running order free of charge to said B. Gannon, for the purposes of handling his freight and carrying his customers up and down from his portion of said building.

" 'The Western Boot & Shoe Manufacturing Company further agrees to furnish said B. Gannon whatever space necessary at the entrance of said elevator, and on the ground floor of said building, for the purpose of receiving and shipping of the said B. Gannon's freight.

" 'The Western Boot & Shoe Manufacturing Company further agrees that, in the construction of said building, there shall be pipes connecting the fourth and fifth floors with the boiler-room of said building, of sufficient capacity, and so arranged, that said B. Gannon can discharge all chips and sweepings of leather from said fourth and fifth floors through said pipes into said boiler-room. In consideration of the foregoing said B. Gannon agrees to pay said Western Boot & Shoe Manufacturing Company the sum of one hundred and seventy-five dollars ($175) per month at the expiration of each month during the term of this contract; and said B. Gannon further agrees that he shall keep said fourth and fifth floors in repair during the term of this contract, ordinary wear and tear excepted.

" 'WESTERN B. & S. MFG. CO.
" 'I. STEIN, President.
" 'B. GANNON.'

"Plaintiff further states that, at the time of the execution of said contract between it and the defendant, said building was in process of erection, but was not completed; that at said time the plaintiff was not in possession of said premises, or any part thereof, and had no lease therefor, but had merely the agreement for a lease hereinbefore referred to; and that all of these facts were well known to the defendant at the time of the execution of said contract between it and the defendant.

"Plaintiff further states that said building was completed on or about the —— day of November, 1890, at. which time it entered into the possession of said building and premises, and that heretofore, to-wit, on or about the —— day of February, 1891, a lease for said building and premises was executed and delivered to it by said Reyburn, said lease being for a term ending on the first day of January, 1896, and providing for a renewal thereof for a further term of five years at the election of the plaintiff.

"Plaintiff further states that, after it had thus obtained said possession of said building and premises, it delivered to the defendant the possession of said fourth and fifth floors of said building, and all space to which he was entitled under said contract between him and plaintiff, and defendant entered into the possession thereof and upon the enjoyment thereof; and that, immediately after said lease had been executed to it by said Reyburn, it tendered to the defendant a lease for said fourth and fifth floors for the term fixed by said contract between it and him, and that said lease was in every way in conformity with said last-mentioned contract. That defendant refused to execute said lease or any other lease whatsoever, notwithstanding that plaintiff offered to conform said lease, or any other lease whatsoever, to the wishes of defendant in any way not

contrary to said contract between it and the defendant, and that defendant still refuses so to do, but still retains the possession of said fourth and fifth floors.

"Wherefore, plaintiff prays the court to order and adjudge that the defendant specifically perform said contract between it and the defendant, and for such other and further relief as to the court may seem meet and proper."

The trial court sustained a demurrer to this petition, upon which ruling error is assigned. Both parties concede that the propriety of this ruling depends on the proposition, whether the instrument set out in the petition is a lease, or a mere agreement for a lease. Whether it is the one or the other must depend on the intention of the parties, which is to be gleaned from the instrument itself and surrounding circumstances stated in the petition, and admitted by the demurrer to be true.

The plaintiff advances the following reasons why the instrument should be construed to be a mere agreement for a lease: That it does not use the terms generally employed to effect a present letting; that the commencement of the term is not definitely fixed therein; that the plaintiff itself had no title at the time when the agreement was executed, which fact was known to the contracting parties, and which should be controlling, as contracts in regard to premises not *in esse* are enforceable in equity only.

The words, "agree to let," have for a long time been held to be apt words of a present demise. *Doe v. Benjamin*, 9 A. & E. 644; *Chapman v. Black*, 4 Bing. (N. C.) 187. In that case it is true the tenant was in possession already, but the contract under consideration expressly provided that a lease was to be drawn upon the usual terms. The court unanimously held that the words, agree to let, were effectual in creating a present

demise, and that the new term began from the date of the execution of the instrument, although the tenant's former term had not yet expired. In *Averill v. Taylor*, 8 N. Y. 44, the same point was ruled in the same manner by the referee, and, although the opinion of the court does not pass on it in so many words, it decides it by implication by affirming the finding of the referee.

The objection that the commencement of the term was not definitely fixed is not tenable in point of fact. Here the commencement of the term was fixed, although the event on which it depends was contingent. *Bacon v. Bowdoin*, 22 Pick. 401, is directly in point on that proposition, nor can we see any reason whatever why the maxim, *certum est quod certum reddi potest*, should not apply to this class of contracts.

In regard to plaintiff's last objection we may say that, while a mutual undertaking between parties to do what both know to be impossible is vain and idle, lacking the elements of a contract (Bishop on Contracts, sec. 579), that rule can have no application here, as the plaintiff himself relies upon the contract; and the question is not the validity of the contract, which is conceded, but its character. Since there is nothing in the law which prevents one from executing a present demise of a building not *in esse* (*Bacon v. Bowdoin, supra*), there is, by analogy, nothing which prevents him from making a sub-lease of a part of a building, although he himself has a mere agreement for a lease, and expects, subsequently, to get a formal lease. On the authority of *Doe v. Benjamin, supra*, and *Chapman v. Black, supra*, even the plaintiff had a lease when he made the contract, because those cases do not treat the fact, that a future formal lease was to be executed, as controlling the character of an instrument which, in terms only, "agrees to let." But even if that fact were controlling in determining the intention, as is

intimated in *Jackson v. Delacroix*, 2 Wend. 433, yet there is nothing in the instrument under consideration which would authorize us to hold that it was the intention of the parties that a future formal lease should be executed. The instrument is complete in itself. It does not, in terms, provide for the execution of a future lease. It fixes the term, rent and duty to repair, and the plaintiff, in effect, conceded that the defendant could not be compelled to execute an instrument containing additional terms, by stating that "he agreed to conform said lease to the wishes of the defendant not in any way contrary to said contract."

As the defendant is in possession, as the plaintiff's remedy at law under the agreement already existing is complete, and as equity at best could compel only a more formal duplication of the contract already existing, without adding anything thereto, we are of the opinion that the plaintiff is not entitled to the equitable relief it seeks, and that the demurrer to its petition was properly sustained. The judgment is affirmed. All the judges concur.