## VER STEEG, Respondent, v. BECKER-MOORE PAINT COMPANY, Appellant.

### St. Louis Court of Appeals, April 12, 1904.

1. **UNLAWFUL DETAINER:** Amendments. In an action of unlawful detainer begun before a justice of the peace, which was removed by a writ of certiorari to the circuit court, it was proper to permit the plaintiff in the circuit court to amend his complaint increasing the amount of damages prayed for the detention of the property and the sum averred as the monthly rent.

2. ——: ——. The statute requiring the complaint in an action of unlawful detainer to be verified does not require the amount of damages or the value of the rents shall be stated under oath as a prerequisite to jurisdiction, and therefore,

where such complaint is amended, by increasing the amount of damages and the value of the rents, without further verification, after the case has been removed to the circuit court by writ of certiorari, the circuit court was not thereby divested of jurisdiction.

3. **LANDLORD AND TENANT: Month to Month: Notice to Quit.** Where a tenant obtained possession of the premises rented on the sixth day of the month, and at the time paid rent for the remainder of the month, and thereafter .paid his rent on the first of each month, the tenancy, as affecting notice to quit, was from the first day of each month to the first day of the ensuing month.

4. ———: **Lease: Agreement to Lease.** Where a landlord submits a written proposition as follows: "It is agreed that a lease will be given to B. et al., or their assigns for five years," etc., no date being fixed for the beginning of the term, those words do not constitute a present demise of the property in the absence of other facts showing such purpose.

5. ———: ———: ———. Where such a proposition was transmitted in answer to a former proposition, presented by the would-be tenant, and contained terms of a proposed lease differing from those mentioned by the tenant, and afterwards a formal lease was executed by the parties, containing terms differing from both propositions, such a proposition is not a lease nor an agreement of any kind, and, in an action by the landlord to recover possession of the premises, it was proper to exclude it from the evidence.

6. ———: ———: ———. And a tenant, who took possession in pursuance of such negotiations, was a tenant from month to month, and made improvements on the property at his peril.

7. ———: ———: **Alterations.** Where a written lease signed by the lessor was delivered to the intending lessee, who made alterations in it favorable to himself, and the lessor did not consent to such modifications nor redeliver the lease, the lease never became operative so as to give the intending lessee any rights under it by the first delivery.

8. ———: ———: ———. And in an action of unlawful detainer by the lessor, where the evidence tended to show that the would-be lessee subsequently procured possession of one copy of the altered lease for the purpose of copying it, it was not error to instruct the jury that if the lessor demanded that the lessee sign and deliver back one copy of the lease, and the lessee refused to accept it and sign it, so as to make it effective, then the lease was void although signed by the lessor.

9. ———: ———: **Delivery.** An instruction which told the jury that if rent was paid and accepted with the understanding of both parties that the lease was in full force and effect, the verdict should be for the defendant, was sufficiently favorable to the defendant.

10. ———: ———: ———: **Evidence.** A letter written by the agent of the plaintiff, which plaintiff claimed was enclosed with the lease in transmitting it to defendant, though the defendant denied receiving such letter and it was not clearly shown by the testimony of the agent how the letter was sent, was admitted in evidence; if this was error, it was not prejudicial because it was conceded that the alterations in the lease were made after the delivery and the essential question was whether the lessor subsequently assented to the alterations.

11. **PRACTICE: Comments of Court During Trial.** The appellant can not complain of improper comments made by the court during the trial, where he made no objection nor saved exception at the time to the remarks of the court.

12. **LANDLORD AND TENANT: Lease: Delivery: Evidence.** It was not error to exclude testimony of a witness in relation to the cancellation of insurance on the building, where the evidence showed that the defendant did not refuse to deliver the lease on account of such cancellation.

13. **PRACTICE: Verdict: Correction.** Where the jury rendered a verdict for nominal damages and it was apparent that they misapprehended the instruction in regard to the allowance of damages, which, in no event, could have been nominal, it was not error for the court to refuse to accept the verdict and to permit the jury to retire and bring in another.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*W. B.* and *Ford W. Thompson* for appellant.

(1)   This complaint, not having been sworn to, is fatally defective, and conferred no jurisdiction on the circuit court to try the case.   Reilly v. Powell, 34 Mo. App. 431; Tegler v. Mitchell, 46 Mo. App. 349.   (2)   It is submitted that the above authorities show that such

amendment was not only improper, but that in any event it should have been sworn to after it had been made; this not having been done, the court had no jurisdiction of the case, and the judgment herein should be reversed and the case dismissed. The action of the court in this respect was excepted to, and therefore this case is within the rule of the Court of Appeals laid down in the case of Wiltshire v. Triplett, 71 Mo. App. 332, which case follows the case of Fletcher v. Keyte, 66 Mo. 285, and draws a distinction between that case and the case decided. (3) The uncontradicted testimony, both verbally and in writing, shows that the possession of the defendant for the premises in controversy commenced on the sixth day of February, 1902, and that if defendant was a monthly tenant then defendant was entitled to thirty days' notice to terminate its tenancy, and the two notices to quit were insufficient to terminate the monthly tenancy. Russell v. McCartney, 21 Mo. App. 544; Gun v. St. Clair, 52 Mo. 330; Taylor's Landlord and Tenant, sec. 38, p. 81; Snyder v. Parsons, 75 Mo. App. 529. (4) The proposition in writing of the defendant for himself and his assigns, of date November 19, 1901, to lease the premises for a term of five years, setting forth the terms of the lease and the repairs to be made, the check for the sum of $83.35, dated November 21, 1901, and the acceptance thereof and the receipt of the same date for the $83.35, setting forth the terms of a lease to Becker, or his assigns, for five years at $1,000 a year for the first two years, and $1,200 a year for the next three years, and the repairs to be made in accordance with the terms of the proposition of November 19, 1901, the possession taken thereunder, the payment of the rent thereafter, the agreement for possession, dated January 18, 1902, the receipt for $66.65, and the letter of March 19, 1901, constitute an agreement in writing to lease the premises for the period mentioned, under section 4110 of the Revised Statutes of 1899. Boot & Shoe Co. v. Gammon, 50 Mo. App. 642; Taylor on Landlord and

Tenant, sec. 183; Shaw v. Farnsworth, 108 Mass. 358; Eastman v. Perkins, 111 Mass. 30; Livingstone v. Kisselbrack, 10 John. (N. Y.) 336. (5) The depositing of a letter in the postoffice is not prima facie evidence that the person to whom it was addressed received it, unless the postage thereon is shown to have been prepaid. Welsh v. Guaranty Fund Life Soc., 81 Mo. App. 36; Bank v. Latimer, 64 Mo. App. 322; Plath v. Ins. Co., 4 Minn. 484; Briggs v. Harvey, 130 Mass. 108; Huntley v. Whittier, 105 Mass. 391; 13 Am. and Eng. Ency. Law, p. 260, par. c.

*T. Percy Carr* for respondent.

(1) The contract dated November 19, 1901, providing, "It is agreed that a lease will be given," etc., is not a lease, but only a contract for a lease. Brewing Assn. v. Niederluecke, 76 S. W. 645; Donovan v. Brewing Co., 92 Mo. App. 341. (2) Such contract for a lease does not constitute a defense to this action, being a proceeding in unlawful detainer, brought before a justice of the peace. Ridgley v. Stillwell, 28 Mo. 400; Finney v. Cist, 34 Mo. 303; Gruenewald v. Schaales, 17 Mo. App. 324; Willis v. Stevens, 24 Mo. App. 494; Orr v. McCurdy, 34 Mo. App. 418; Elliott v. Abell, 39 Mo. App. 346; Hicks v. Martin, 25 Mo. App. 359; De Moss v. Furn. & Carpet Co., 74 Mo. App. 117; Nance v. Metcalf, 19 Mo. App. 183; Enlow v. Newland, 22 Mo. App. 581; Philips v. Burrows, 64 Mo. App. 355. (3) The defendant can not at the same time claim under its original contract for a lease and also claim that said contract has been superseded by a formal lease. (4) The defendant in entering under a contract for a lease void under the statute of frauds, became a tenant at will by statute, which is converted into a tenancy from month to month by the payment of monthly rent. R. S. 1899, sec. 4110, 3414, 3415, 3418; Shea v. Seelig, 89 Mo. App. 146; Lehman v. Nolting, 56 Mo. App. 549; Hoover

v. Pacific Oil Co., 41 Mo. App. 317; Beiler v. Devoll, 40 Mo. App. 251; Butts v. Fox, 96 Mo. App. 437; Kerr v. Clark, 19 Mo. 133; Tiefenbrun v. Tiefenbrun, 65 Mo. App. 254; Express Co. v. Tyler O. F. Co. 72 Mo. App. 151; Withnell v. Petzold, 104 Mo. 409; Ridgeley v. Stillwell, 28 Mo. 401; Goodfellow v. Noble, 25 Mo. 60; Hammon v. Douglas, 50 Mo. 437; Cunningham v. Roush, 157 Mo. 336; Williams v. Deriar, 31 Mo. 15; Scully v. Murray, 34 Mo. 421. (5) Defendant having entered in the middle of a month and having paid rent up to the first of the following month, and thereafter continued to pay rent monthly, the tenancy dates from the first of the month. 1 Taylor on Landlord and Tenant, sec. 69; 1 Wood on Landlord and Tenant, sec. 34, and cases cited. Moreover, defendant by its conduct and by undertaking to set up a written lease for a term of years, waived any defect which it might have otherwise alleged in the notice to quit. Corby v. Book & Stationery Co., 76 Mo. App. 506; Drey v. Doyle, 99 Mo. 470; Drey v. Doyle, 28 Mo. App. 249; Boynton v. Bodwell, 113 Mass. 531. (6) The lease never went into effect because: (a) The jury found as a fact that it was not accepted. (b) The alterations, being made by Mr. Becker and his attorney after Mr. Kilpatrick's signature, nullified the instrument as originally signed. Kelley v. Thuey, 143 Mo. 434; Powell v. Banks, 146 Mo. 643. (c) The lease could only be validly executed by the Edmund Realty Company by means of its corporate seal. Pullis v. Pullis, 157 Mo. 582; Fire Clay Co. v. Ellison, 30 Mo. App. 67; R. S. 1899, secs. 971, 904, 982, 893, 913; Perry v. Price, 1 Mo. 645; Shewalter v. Pirner, 55 Mo. 218; Land Co. v. Jeffries, 40 Mo. App. 362. (d) The corporate seal being absent, the authority of Kilpatrick to execute the instrument in behalf of the corporation must be shown by the party producing it. Pub. Schools v. Risley, 28 Mo. 415; Musser v. Johnson, 42 Mo. 74; Brownell v. Barnard, 116 Mo. 667; Roth v. Wire Co., 94 Mo. App. 262; Fire Clay Works v. Ellison, 30 Mo. App.

67; Kansas City v. Railroad, 77 Mo. 180; Chouquette v. Barada, 28 Mo. 491; Railroad v. St. Louis, 66 Mo. 228; McKeag v. Collins, 87 Mo. 164; Hall v. Bank, 145 Mo. 418. (7) The court properly permitted the jury to amend and correct its original verdict. R. S. 1899, sec. 3338; State ex rel. v. Rombauer, 44 Mo. 590; Cattell v. Publishing Co., 88 Mo. 356; Long v. Talley, 91 Mo. 305; Fathman v. Tumilty, 34 Mo. App. 236; Megher v. Stewart, 6 Mo. App. 593; Henley v. Arbuckle, 13 Mo. 209; State v. Steptoe, 1 Mo. App. 19; Christopher v. White, 42 Mo. App. 428; Bosse v. Thomas, 3 Mo. App. 472; Hartman v. Railroad, 48 Mo. App. 619; State v. Chumley, 67 Mo. 41; Kreibohm v. Yancey, 154 Mo. 67; Mills v. Taylor, 85 Mo. App. 111; State ex rel. v. Clementson, 69 Wis. 635; Pepper v. Philadelphia, 114 Pa. St. 100; Goodwin v. Appleton, 22 Maine 458; Coffee v. Grooves, 20 Fla. 83; Edelen v. Thompson, 2 Har. & Gill 31; Sutliff v. Gilbert, 8 Ohio 405; Warner v. Railroad, 52 N. Y. 440; Hay v. Ousterout, 3 Ohio 384; Wolfran v. Eyster, 7 Watts 38; Proffatt on Jury Trials, secs. 456, 457. (8) The court properly permitted complainant to amend the complaint. Laws 1901, p. 176; Spring Co. v. Tool Co., 96 Mo. App. 523; Schworer v. Christophel, 72 Mo. App. 116; Dean v. Trax, 67 Mo. App. 517; Wiltshire v. Triplett, 71 Mo. App. 332; R. S. 1899, sec. 3391. The amount of the damages recovered could not exceed the amount claimed in the complaint. Coles v. Foley, 13 Mo. App. 249. It was therefore necessary to increase in the circuit court by amendment the damages originally claimed, in order to cover the six months' rents and profits which had accrued in the meantime. R. S. 1899, sec. 3335. The damages could be increased to any amount, as there is no limit to the amount of damages which can be recovered before a justice in unlawful detainer. Silvey v. Sumner, 61 Mo. 253.

### STATEMENT.

This is an action of unlawful detainer instituted

before a justice of the peace to obtain possession of a four-story brick building, known as Dr. J. H. McLean's Laboratory Building, 1131 Collins street in the city of St. Louis, and six buildings, Nos. 230 to 240 inclusive, on Biddle street at the corner of Collins.

As originally filed the complaint laid the damages at $500 and the monthly value of the rents and profits at $300.

The case was removed by writ of certiorari to the circuit court, in which court the respondent was permitted to amend the complaint by demanding $3,000 damages for the detention of the premises and laying the value of the rents and profits at $450 a month. An exception was saved to this amendment, and it is contended that as the complaint was not again verified by affidavit after it was amended, the circuit court had no jurisdiction to try the case.

The defendant, the Becker-Moore Paint Company, was organized as a corporation subsequent to November 19, 1901. Said corporation became the tenant and occupant of the premises under and arrangement with their then owner, the Edmund Realty Company, a corporation. The Rutledge & Kilpatrick Real Estate Company, another corporation, acted as agent of the Edmund Realty Company in leasing and selling the property in controversy. The appellant's occupancy of the premises began subsequent to the following correspondence between the Edmund Realty Company and William E. Becker, president of the appellant company, contemplating the incorporation of the Becker-Moore Paint Company and its tenancy of the premises under a lease to be given to it by the Edmund Company:

"St. Louis, Nov. 19, 1901.
"Rutledge & Kilpatrick R. E. Co., City.

"Gentlemen: Relative to your buildings, numbers 1131 and 1139 inclusive, Collins street, I propose to lease same on the following terms:

"Five years lease with privilege of renewal for five years.   Terms, one thousand dollars per annum, for the first three years, and nine hundred dollars per annum, for the remaining two years.   Terms of renewal to be nine hundred dollars per annum for a term of five years, under the following conditions: landlord to keep walls, frames, sash, roof and all gutters and down-spouts in good condition, with privilege of use of alleys on south and west side of buildings during the life of the lease and the necessary repairs explained to your Mr. Bakewell.   Rent to begin when entire possession is given us. We agree to make deposit on execution of lease—the same to be applied on rent.

"Awaiting your prompt consideration and reply, I am,                    Yours very truly,

"WM. E. BECKER,

"603 Franklin avenue."

To that proposition no formal reply was made but Becker took possession of such portions of the premises as were then vacant and the Edmund Realty Company gave the following receipt and agreement:

"Exhibit G.

"Received of William E. Becker et al., the sum of eighty-three dollars and thirty-five cents ($83.35) for one month's rent of buildings 1131 to 1139 Collins street, being the two buildings on the southwest corner of Collins and Biddle streets.   Rent to date from time full possession is given to him.

"It is agreed that a lease will be given to William E. Becker et al. or their assigns, for five years: rent to be at rate of one thousand dollars ($1,000) per annum for the first two years, and at the rate of twelve hundred dollars ($1,200) per annum for the next three years. All repairs to be done as per letter of November 19th.

"EDMUND REALTY COMPANY,

"RUTLEDGE & KILPATRICK REALTY CO.,

"Per ROBERT RUTLEDGE, V. P."

Those documents were offered in evidence by the appellant and excluded by the court and an exception saved. In connection with the offer of the document marked "Exhibit G" this statement of counsel for the appellant as to the purpose of the offer, was made:

"I offer this contract for two reasons; first, to show that the Rutledge & Kilpatrick Realty Company received the rent of these premises, and that the rent under the terms of that receipt was to begin after full possession was given. Now, then, that was the first step taken. I have identified the checks and contract and everything; that we paid that rent, paying the first month's rent that was to be paid under the lease, and that we paid that rent after the lease was executed. In other words, that this contract was the beginning of the negotiations, and that we took these different steps. We first paid the $88.33, or $65.66 in November; we got that paper in November. In pursuance of that authority we took possession of the property. We made the improvements upon the property. In February—on the sixth of February—before the sixth of February—in January, we agreed to pay part of the expenses of a compromise with Fee and Morrison, and we went on with these improvements. Then we got possession of this instrument for examination. Afterwards we got a letter from Mr. Bakewell which we have here, not yet read in evidence. Now, we claim this is a part of the steps that were taken in order to secure that lease, and that we are entitled to the lease, and that we accepted the lease."

The understanding was that the rent of the premises should not begin until complete possession was obtained by Becker or his intended corporation, which did not occur until February 6, 1902; and though the above receipt for one month's rent was given in November, 1901, the rent then paid was applied by a subsequent agreement between the Edmund Company and the appellant, in satisfaction of the rent for the month of

March, 1902. In the latter month memoranda of a lease were drawn up in duplicate, as follows:

"This indenture made the thirty-first day of December, in the year of our Lord, A. D. nineteen hundred and one, between Edmund Realty Company, a corporation organized under the laws of the State of Missouri, party of the first part, hereinafter called the lessor, and Becker-Moore Paint Company of the city of St. Louis, State of Missouri, party of the second part, and hereinafter called the lessee,

"*Witnesseth*:—That the said lessor in consideration of the rents, covenants and agreements mentioned and reserved on the part of the said lessor, its executors, administrators, and assigns, has leased, and by these presents does lease to the said lessee,

"Certain premises known as No. 1131 and No. 1133 Collins street, consisting as follows: No. 1131 being a three-story and basement brick building and No. 1133 being a two-story brick building, and being situate on the southwest corner of Collins and Biddle streets, in city block No. 71 w., in the city of St. Louis, State of Missouri, to commence on the first day of January, A. D. nineteen hundred and two, for and during the term of three years at the yearly rental of one thousand dollars ($1,000) for the first two years of said term payable in equal monthly installments in advance of eighty-three dollars and thirty-three cents ($83.33); and at the yearly rental of twelve hundred dollars ($1200) for the third year of said term, payable in equal monthly installments in advance of one hundred dollars ($100). The privilege is given to renew this lease after the third year for two more years at the yearly rental of twelve hundred dollars ($1200).

"And failure to pay each month's rent when due and after a demand for the same, to produce a forfeiture of this lease, if so determined by said lessor, or its successors. The lease of said tenement, or any part of it, is not assignable, nor is said tenement, or any part

of it, to be underlet under penalty of forfeiture, without the written consent of said lessor; *provided said lessee may sublet one of said buildings.* And it is hereby covenanted, that at the expiration of this lease, the said tenement and premises are to be surrendered to said lessor, its heirs, assigns or successors, in the condition received, only excepting natural wear and decay or the effects of fire. The total destruction of said building by fire, lightning or storm shall cause a termination of this lease at the option of either of the parties hereto, but in the event of a partial destruction of said premises, by fire, lightning or storm, not resulting from any neglect on the part of the said lessee, then this lease shall not be terminated, but the rent shall be reduced in proportion to said actual damage done to said premises, until the said damaged portion may be repaired, or restored to said lessee, which the said lessor covenants to do or cause to be done with all possible speed.

"All repairs made by the said lessee, all heating and steam pipes, elevator, and all other improvements made by the lessee, shall remain the property of the said lessor, at the expiration of this lease. Said lessor agrees to keep the walls, roofs, all down-spouts, guttering *and private alleys* in good repair during the continuance of this lease. All repairs deemed necessary *on the interior of said premises* by the said lessee, to be made at the expense of the said lessee, with the consent of the said lessor, and not otherwise.

"The said lessee is also to have the use of the private alley around the above-described premises.

"The said lessee, and all holding under it, hereby engage to pay the rent above reserved, and double rent for every day it, or any one else, in its name, shall hold on to the whole or any part thereof of said premises after the expiration of this lease, or of its forfeiture for non-payment of rent, etc. This tenement and premises to be kept free of any nuisance thereon, at the expense of said lessee.

"Made and signed in duplicate this thirteenth day of March, nineteen hundred and two.

"EDMUND REALTY COMPANY,

"By CLAUDE KILPATRACK,        (Seal)
                              "President.
"THE BECKER-MOORE PAINT CO.,   (Seal)
        "Per W. E. BECKER,
                    "Pres. & Treas."

The italicized words in said instrument touch the most vital controversy in this litigation; for it is contended by the respondent that the first two italicized portions were inserted by the appellant's president, W. E. Becker, and its attorney, Mr. Thompson, after the leases had been executed by the Edmund Realty Company, that the officers of the latter company knew nothing about those alterations of the instrument as originally executed and delivered by it to the appellant, and that, therefore, the lease never became operative. The alterations were made by inserting the following phrases in the original drafts of the leases after they had been signed by the Edmund Company: "Provided said lessee may sublet one of said buildings," "and private alleys." The effect of the first insertion is obvious, and the last one bound the lessor to keep a private alley adjacent to the premises in repair, which said company never agreed to do. As to this alteration: "On the interior of said premises," there is no dispute. It is admitted that the stenographer who wrote the original lease on a typewriter left out those words by mistake, and, as they were intended to be part of the lease, they were inserted before the instruments were signed by the Edmund Realty Company.

The chief conflict in the evidence is as to the execution and delivery of the duplicate instrument of lease, and it is necessary to state the bearing of the testimony on that issue of fact. For the respondent the testimony is that the instruments were prepared by Robert Rut-

ledge, a member of the Rutledge & Kilpatrick Company, which was acting as agent for the Edmund Company; that they were signed by the Edmund Company by Claude Kilpatrick, president, March 13, 1902, and transmitted March 15th in a sealed envelope to the Becker-Moore Paint Company, either by mail or messenger. Inclosed in the envelope with the leases was the following letter:

"March 15, 1902.

"Becker-Moore Paint Company, City.

"Gentlemen: We inclose herewith the leases for the building which you occupy, for your signature. Retain one for yourselves and return the other copy to us. We also inclose you a bill for rent of the building for the month of March, and we will thank you to mail us a check to cover same.        Yours very truly,

"RUTLEDGE & KILPATRICK REALTY COMPANY,
"RENE BAKEWELL, Treasurer."

The appellant denied receiving any such letter and objected to its admission in evidence on the score that it was not shown to have been properly addressed, stamped and deposited for mailing; and in this connection the appellant offered the following letter, which is said to be inconsistent with the fact that the one of March 15th was sent:

"St. Louis, March 19, 1902.

"Becker-Moore Paint Co.,

"Gentlemen: We inclose you bill for rent of building 1131 and 1133 Collins street from February 6th to March 1st, $66.65. Please send us check for this amount and we will send receipts up to April 1st, allowing the check sent us some time ago to apply on March rent.

"Yours truly,
"RUTLEDGE & KILPATRICK REALTY Co.,
"RENE BAKEWELL, Tr."

The court excluded that letter and an exception was saved.

Continuing in regard to the dispute about the delivery of the leases: The testimony for the respondent tends to show that an agent of the Edmund Realty Company called on Mr. Becker once or twice after they were sent to the Becker-Moore Paint Company, to see if the leases had been duly executed by the paint company and to get the copy which was to be retained by the lessor. Mr. Becker gave reasons for not having signed them, and finally said to Robert Rutledge that he did not know whether he would sign them or not, as the premises were not large enough for his company's business and it might wish to get out after a time and would prefer a shorter lease. Meanwhile disputes had arisen between the lessor and the lessee, and as the relations of those parties were unsatisfactory and they could not agree about the affairs between them, the Edmund Company did not insist on the execution of the lease, not caring whether the lessee continued to occupy the premises or not. While matters were in this condition, according to the testimony for the respondent, and both copies of the lease agreement still in the custody of the appellant, the premises were sold by the Edmund Company to the respondent Ver Steeg by a contract dated November 5, 1902, Ver Steeg taking a memorandum of the contract of sale which recited that the property had been sold for $95,000 to him and provided for the completion of the sale within fifteen days by the delivery of a warranty deed. The memorandum of sale was recorded November 8th and was followed by a warranty deed executed and acknowledged by the Edmund Realty Company on the same day but not placed on record until November 18th. On November 17th, nine days after the recording of the memorandum of the sale of the premises to Ver Steeg, and six months or more after the duplicate lease agreements had been signed and delivered to the paint company by the Edmund Company, Wm. E. Becker acknowledged and filed for record one copy of said lease agreement.

The testimony for the appellant is that after it received the copies of the lease from the Edmund Company, the two alterations were inserted, one giving it the right to sublet a building, the other binding the lessor to keep the private alleys in repair; that afterwards its president, Wm. E. Becker, returned the instruments to the Rutledge & Kilpatrick Company, the agent of the Edmund Company, calling the attention of Mr. Rutledge at the time to the alterations and telling him that the lessee was willing to sign the leases as altered, which, as yet it had not done. Rutledge took them but refused to deliver them to Becker immediately, for the assigned reason that appellant was going to use the premises as a paint shop, which would jeopardize the insurance on the building, saying the insurance companies had already cancelled the insurance on a mattress factory across the way and that he would have to get the mattress factory out before he could deliver the instruments to the lessee. The testimony for the appellant in this connection is that the instruments were afterwards sent to them through the mail in May or June, 1902, in the condition they are now in, except that when the appellant received them the second time, it affixed the rubber stamp signature of the Becker-Moore Paint Company to both instruments, but subjoined to only one of them, under the name of the Becker-Moore Paint Co., the words: "Per W. E. Becker, Prest. & Treas."

This agreement was offered by the appellant, excluded, and an exception taken:

"Agreement.    Exhibit 0.

"For and in consideration of the sum of two hundred ($200) dollars, paid to us by the Edmund Realty Company and the Becker-Moore Paint Company, the receipt of which is hereby acknowledged, and the release to us of any rent that may be due and owing from us to the Edmund Realty Company, or to O. G. Weyer, and in consideration of the dismissal of a suit in which judg-

ment was rendered before Justice Hanley on January 13, 1902, and of the payment of the costs in said suit, by the plaintiffs, we, Alexander Fee and Robert J. Morrison, doing business as Fee-Morrison Company, and all under us, agree to vacate the premises occupied by us on the fourth floor of the building at 1131 Collins street, on or before February 1, 1902, and to deliver possession of the said premises to the Edmund Realty Company.

"We further agree that said Edmund Realty Company and the Becker-Moore Paint Company and their elevator constructors may have access to the fourth floor at once, for the purpose of erecting and constructing an elevator, the hatchway of which is already cut through the lower three floors, and the said parties mutually release each other from all claims to all damages whatsoever.

"The Fee-Morrison Company are to have the use of the new elevator in moving their property from the fourth floor.

"BECKER-MOORE PAINT Co. and

"EDMUND REALTY COMPANY.

"January 18, 1902.          By THOMAS RUTLEDGE,

"Atty."

The following documents were excluded and exceptions saved to the rulings:

"St. Louis, Feb. 16, '03.

"Becker-Moore Paint Co.

"Collins & Biddle sts., City.

"Gentlemen:

"We have put the bridge at the rear of your place of business in the best order possible; it is, however, not strong enough to support heavily loaded wagons, and we wish to kindly ask you to see that loaded wagons only enter from the Collins street entrance; also have out-bound loaded wagons go out at the Collins street entrance so as to avoid the bridge.

"Trusting you will give this your immediate attention, we remain,        Yours truly,

"W. B. VER STEEG."

"To Walter B. Ver Steeg and Rutledge & Kilpatrick Realty Company, his agents:

"You are hereby notified that on the thirteenth day of March, 1902, the Edmund Realty Company by Claude Kilpatrick, President, leased to the undersigned, Becker-Moore Paint Company, the premises known as Numbers 1131 and 1133 Collins street, being a four-story and basement building and a two-story building, in city block No. 71 W. of said city of St. Louis, by a written lease of that date, in which there is the following provision:

" 'Said lessor agrees to keep the vaults, roofs and all down-spouts and gutterings and private alleys in good repair during the continuance of this lease.'

"You are hereby notified that the west private alley, on which said buildings abut and are situated, is now out of repair in the following particulars: that the passageway over this alley, which was constructed on trestles, has become out of repair so that the trestles have given way and the roadway of said alley has fallen so that the same is unsafe and unfit for passage of teams for the use of the undersigned lessee.

"And you are further notified to immediately repair the same, so that the same is fit for the use of the lessee in accordance with the terms of said lease; and unless you make said repairs the undersigned lessee will hold you liable for such damages and loss as it may sustain by reason of your failure to perform the covenant in the said lease, and will make said repairs at your costs and expense and recoup the same against the rent of said premises, unless they are made by you within three days from this twenty-third day of June, 1903.

"The BECKER-MOORE PAINT CO.,

"By W. E. BECKER, Pres. and Treas."

Bakewell, a member of the Rutledge & Kilpatrick Company, got one of the lease instruments from the appellant's office in August, 1902, saying he would copy and then return it. The copy given him was unsigned, he said, by the paint company. This instrument was shown to Ver Steeg before he bought the property and his deed recites that he bought it "subject to existing leases, if any." Mr. Becker testified that the copy of the lease given to Bakewell was signed by the paint company in due form and that the other copy had been signed too, except that his name as president was not attached, as stated heretofore.

After Ver Steeg purchased the property, to-wit; March 26, 1903, he notified the appellant in writing that the rent would be increased from $83.33 a month to $150 after May first, and in case appellant did not wish to remain his tenant at the increased rent, it was notified to surrender possession on said day. As the paint company neither paid $150 nor vacated on May 1st, two formal demands in writing for possession were delivered to it, one on the seventh and one on the twelfth of May.

As said above, the appellant got complete possession of the premises February 6, 1902, and its rents began on that date. It paid $66.65 for the rent from February sixth to March first, and thereafter continued to pay rent to Ver Steeg at the rate of $88.33 a month until the first day of May, 1903. It also tendered the rent for the month of May, but that was refused and this action of unlawful detainer was instituted May 4, 1903, to obtain possession of the premises.

Other facts will be stated in the opinion and the instructions noticed.

The jury returned a verdict finding the defendant guilty as charged in the complaint, and that the complainant had sustained damage to the amount of $900 and that the value of the monthly rents and profits was $150.

Judgment was entered on the verdict in favor of the respondent for possession of the premises with $300 a month as rents and profits.

An appeal was taken to this court.

GOODE, J. (after stating the facts.)—1. Respondent was rightly permitted to amend his complaint so as to increase the amount of damages prayed for the detention of the property and the sum averred as the monthly rent. This was ruled in previous decisions to which we adhere. Elliot v. Abell, 39 Mo. App. 346; Champ Spring Co. v. Roth Tool Co., 96 Mo. App. 523.

2. The proposition that the amendment in the circuit court terminated the jurisdiction of that court because the complaint was not verified afterwards, is unsound. By virtue of the statute a justice of the peace has no power to issue a summons to a defendant in an unlawful detainer action until a verified complaint is filed, describing the tenements unlawfully detained, and stating by whom, and when they were detained. R. S. 1899, sec. 3224; Fletcher v. Keyte, 66 Mo. 285; Riley v. Powell, 34 Mo. App. 431; Tegler v. Mitchell, 46 Mo. App. 349; Wiltshire v. Triplett, 71 Mo. App. 332. The statutes do not prescribe that the amount of damages or the value of the rents shall be stated under oath as a prerequisite to jurisdiction; and generally the *ad damnum* clause of a petition may be amended without altering the issues tendered by it. It follows, therefore, that as the original complaint was sworn to and the justice had jurisdiction of the cause, the appeal gave the circuit court jurisdiction. If it is conceded for argument's sake that the amendment was a nullity, the case still stood on the original complaint and the appellant might have objected to a recovery beyond the amounts originally stated as the damages and the value of the rent. But that point was not raised, and in fact no exception was taken to the amendment. Nevertheless, if the circuit court had been deprived of jurisdiction the

point would be available now; but the amendment worked no such result.

3. The facts do not sustain the proposition that the appellant's tenancy, if it was a month to month one, ran from the sixth day of each month to the same day of the ensuing month. The argument is that as the appellant did not obtain possession if the entire premises until February 6, 1902, and it was agreed the rent should begin when complete possession was obtained, the term ran from and to the sixth day of each month instead of the first. But $66.65 were paid for the rent for the fraction of the month of February during which appellant occupied the premises, and thereafter the rent was paid monthly as it accrued on the first day of every month. Immediately after the February, 1902, rent was paid, the first rent for a full month, which had been paid in November, 1901, was by agreement, devoted to discharging the rent for the month of March, 1902, as no rent had accrued prior to February because complete possession of the buildings had not been obtained by the paint company. Both prior and subsequent to said company's occupancy, the parties treated the rent as due on the first day of each month and the monthly term as running from that day. It is said in Taylor on Landlord and Tenant (4 Ed.) sec. 69, that "if a tenant enters in the middle of a quarter and afterwards pays rent to the beginning of the succeeding quarter and thereafter pays half-yearly, his tenancy will be deemed to commence from the quarter date to which he paid up;" citing Doe v. Johnson, 6 Esp. 10. See also Wood, Landlord & Tenant, sec. 34, and Tyng v. Theo. Sem., 14 Jones & Spencer 250.

4. This case was tried on the assumption that the rights of the respective parties to possession of the tenements in controversy depended exclusively on whether or not a contract of lease was consummated between the Edmund Company and the paint company; which, in turn, depended on whether the memoranda dated March

13, 1902, purporting to vest a leasehold in the paint company, were agreed to by the Edmund Company after the alterations in the original drafts had been inserted by the paint company. It will be seen from the statement that the appellant asserts those memoranda were twice delivered to it by the Rutledge & Kilpatrick Company as agents of the Edmund Company; first without alterations and afterwards with them; whereas the respondent contends they were only delivered once and then without the alterations, and were thereafter retained by the appellant but never accepted or signed until respondent's contract for the purchase of the premises had been recorded. After calling the jury's attention to those opposed positions of the parties, the trial court concluded an instruction, given at the instance of the plaintiff, with this paragraph which illustrates the theory adopted at the trial: "The controversy in the case, therefore, is as to whether or not the lease in its present shape was delivered by the plaintiff to the defendant and accepted by the defendant, and treated by the parties as a subsisting lease. This is a question of fact for you to decide under the evidence and instructions of the court." The principal assignment of error on this appeal is that the circuit court misconceived the case in adhering to the theory thus expressed, for the reason that the document designated as "Exhibit G," together with the payment of the first month's rent by the paint company in November and its occupancy of the premises, constituted a lease and gave it the right to retain the premises for the term mentioned in said document, regardless of the completion of the contract of March 13, 1902. Appellant's position is that said document (Exhibit G) contained words of present demise and, therefore, when appellant took possession and paid rent, became operative as a lease, but looked to the execution of a more formal instrument in the future as further assurance to the appellant merely, and not as a prerequisite to vesting it with a valid lease-

hold. The decision of this question turns on the intention of the parties, to be gathered from the document itself, if possible; otherwise, from correlated documents and the conduct of the parties. Western Shoe Co. v. Gannon, 50 Mo. App. 642; St. Louis etc. Assn. v. Niederleucke, 76 S. W. 645; 1 McAdam, Landlord & Tenant, sec. 58. Words of present demise are construed to give a lease if no inconsistent purpose appears. 1 Taylor, Landlord & Tenant (4 Ed.), sec. 39 et seq. The paramount consideration is the intention of the parties, which fixes the construction to be put on the instrument. The words "agree to let," and similar phrases, have been held to confer a leasehold though a further writing or memorandum was called for in the document wherein those words were used. Doe v. Benjamin, 9 A. E. 644; Jackson v. Kisselbrack, 10 John. (N. Y.) 336. In the case last cited the words were that the lessor "hath set and to farm let," and the paper set forth explicitly the terms of the letting. In Western Shoe Co. v. Gannon, supra, the words were "hereby agree to lease," etc., setting out fully the terms.

The instrument we are to construe reads: "It is agreed that a lease will be given to Wm. E. Becker et al., or their assigns for five years," etc. Those are not words of present demise; and, moreover, no date, either definite or contingent, was fixed for the commencement of the term. Certainly we can not construe the document on its face to be a lease, and must look beyond it for facts to justify that construction; and when we look beyond, we must take all relevant facts into consideration. Said document followed a proposition in writing which W. E. Becker submitted to the Rutledge & Kilpatrick Company as agent of the Edmund Company, November 19, 1901, in which he offered to take a lease on the premises in controversy for five years with privilege of renewal for another five years, the rent to be $1,000 a year for the first three years and $900 for the remaining two years of the original term, and $900 a year if there

was a renewal. The instrument relied on as a lease, instead of accepting that proposition, submitted a different one, viz.; to give a lease to Wm. E. Becker et al., or assigns, for five years, at $1,000 per annum for the first two years and $1,200 per annum for the next three years. That proposition was unlike the first one in the rent to be charged and in granting no renewal privilege. Comparing those two writings with the more formal writings of March 13, 1902, which were agreed to except as to the disputed alterations, we find the last documents provided for a lease for three years from January 1, 1902, at a rent of $1,000 per annum for the first two years payable in monthly installments, and $1,200 for the third year, with privilege of renewal for two more years at a rental of $1,200 per annum. It is thus seen that the terms finally agreed to by the parties are unlike those submitted in their respective propositions; showing that previously no certain and binding agreement for a lease had been reached. The lease proper can not be regarded as a further assurance of the lease claimed by virtue of Exhibit G. because its terms are essentially different, and if assented to by both parties, as appellant says, amounted to an abandonment of the alleged prior lease. Two leases of the same tenement, binding the same parties by contradictory covenants, can not coexist. In this connection we call attention to the purpose for which Exhibit G. was offered in evidence, as declared by appellant's counsel in the remarks quoted in the statement. Those remarks show that the instrument now brought forward as conferring a lease and was not relied on as such at the trial; but was offered to elucidate the rights of the parties under the contract of Marc h13th, as being a step in the negotiations that ended in that contract and in authority to the appellant to take possession of the premises. Viewed in any light the facts cast on it, we must hold Exhibit G. was not a lease nor an agreement of any

kind; but a counter-proposition to the one submitted by the appellant in the letter of November 19th.

It follows that the court below did not err in excluding said exhibit and cognate papers from the consideration of the jury.  Appellant's counsel rightly urged that the document operated as a license to his client, or its assignor, Wm. E. Becker, to enter the premises; but no unlawful entry was asserted, and therefore, no proof was needed to justify it.  If the terms proposed had been accepted, the appellant, as assignee in possession, might have filed a bill to compel the execution of a lease conforming to them.  1 Taylor, sec. 37.  But an agreement to give a lease of lands or tenements is not a defense to an action of unlawful detainer; because the right of the promisee to possession under such an agreement, is of an equitable character and can not be enforced by a justice of the peace.  Ridgley v. Stillwell, 28 Mo. 400; Finney v. Cist, 34 Mo. 303.

5.  Interpreting Exhibit G not to be a lease, but only an agreement for one, we must hold the trial court did not err in excluding testimony that appellant had spent money improving the premises.  This testimony was offered to estop the respondent from denying the authority of the Rutledge & Kilpatrick Company to execute the instrument, and would be worthy of consideration if the instrument was intended as a lease; but as we hold that was not its intention, appellant became a tenant from month to month and made the improvements at its peril.

6.  The main defense pleaded an issue of fact which was concluded by the verdict of the jury if they were properly instructed and no error was committed in the rulings on evidence at the trial of the issue.  It is insisted there was no substantial testimony in opposition to that of Mr. Wm. E. Becker regarding the delivery of the lease memoranda; that is to say, his testimony that he first got them at the office of the Rutledge & Kilpatrick Company, afterwards made two interlinea-

tions, took them back to said company, called the attention of one of its officers (Mr. Rutledge) to the interlineations and thereafter received the leases by mail. Suffice to say as to this testimony that it was contradicted by Bakewell and Rutledge. Their version, which has been already stated in substance, was that the leases were sent in an envelope with the letter of March 15th to the paint company without these interlineations, and were retained by the paint company after Becker had refused to comply with several demands to sign and accept them, assigning as a reason for his action, that his company might not want to retain the premises long and in consequence might desire a lease for a briefer term.

7.   It is now urged that the alterations in the lease memoranda after their delivery to the paint company, were immaterial and had no effect except to prevent the defendant from bringing an action on the covenants of the lease.   In support of this proposition we are cited to these cases:   Wood v. Hilderbrand, 46 Mo. 284; Burnett v. McCluey, 78 Mo. 676; Lumber Co. v. Tie Co., 89 Mo. App. 556.   Two of those cases merely held that an alteration in the description of one tract of land in a deed after its delivery, did not affect its validity as a conveyance of other tracts, nor revest the title in the grantor.   The lumber company case held the insertion in a tax deed after delivery, of the name of a person as owner of the land who did not own it, did not destroy the validity of the instrument as a conveyance of the title of the true owners. Those decisions are not in point.   The question in hand is to be decided by other legal principles.   That question is whether the parties to the proposed lease ever agreed, as lessor and lessee, to the terms on which the property should be let: did their minds meet?   Now it is plain that if the version of the facts given by the witnesses for the respondent is true, their minds did not meet.   The Edmund Realty Company signed the instruments creating a leasehold for three years with cer-

tain terms. Those instruments were delivered to the intending lessee, which made two alterations of a self-serving character, one according it the privilege of subletting and the other binding the lessor to keep an alley in repair. That the alterations had been made was not communicated to the lessor. The lessee declined to accept the lease on the terms provided in the instruments transmitted to it. The terms if accepted would have created a contract of a certain character; but modifications were inserted which, in law, were tantamount to a rejection of the proposed contract and required the assent, in turn, of the lessor, for a contract to be formed. Shickle v. Iron Co., 10 Mo. App. 241; Tufts v. Sams, 47 Mo. App. 487; Robertson v. Tapley, 48 Mo. App. 239; Powell v. Banks, 146 Mo. 632.

We have been stating the facts in accordance with the testimony of the respondent. That for the appellant was otherwise and showed a completed agreement; but the jury found a verdict for the respondent and must have accepted as true its version that no contract was made.

8. Complaint is made of an instruction given by the court, for mentioning March 15, 1903, as the date of the delivery of the leases. The court did not assume in the instruction that the leases were delivered that day, but simply said the respondent asserted they were; which was true. But the appellant contends there was no evidence that they were delivered on that date and argues the proposition. Bakewell testified positively they were sent on that day and there was plenty of evidence to justify mentioning the date as the one relied on by the respondent. Much of the reasoning on this branch of the case is devoted to an attempt to prove that all the substantial evidence in regard to the delivery was in favor of the appellant's position; but, in our opinion, the record refutes the argument.

9. The court instructed that for the lease to be valid, the evidence must show it was not only tendered

by the Edmund Company, but accepted by the paint company, and that if the jury found the former demanded of the latter that it sign and deliver back one copy of the lease and the paint company refused to accept said lease and refused to sign it so as to make it effective, then the lease was void, though signed by the lessor, because of its non-acceptance by the lessee. That said instruction is sound generally speaking, is conceded; but it is attacked in this case for the reason, as appellant insists, that the Edmund Company afterwards got one of the instruments, signed by the paint company and containing all the interlineations, which circumstance estopped the Edmund Company and Ver Steeg, its grantee, from denying the validity of the lease. That memorandum or draft was procured in August, 1902, after the two drafts had been delivered to the appellant and after it had refused to accept the terms they contained. It was procured merely to copy, according to the testimony for the respondent. If those were the facts connected with its possession of the altered instrument, the Edmund Company was not estopped. If the appellant wished to assert an estoppel, it should have presented an instruction in proper form, leaving it to the jury to find whether the necessary facts existed.

10. Appellant's theory in regard to this case was fully recognized in various instructions given to the jury of which one will be quoted:

"If you find from the evidence that the Edmund Realty Company executed the lease offered in evidence in duplicate and delivered same into the possession of defendant and that thereafter the defendant returned said copies of the lease to the realty company with corrections and interlineations therein, and that thereafter the Edmund Realty Company redelivered said copies of the lease as corrected to defendant as and for a lease of the premises, and that defendant accepted the copies as such, and that rent was paid and accepted with the understanding by both parties that the lease was in full

force and effect, then the defendant was entitled to retain possession and you should find for the defendant.''

Besides that instruction, the court told the jury the question for them to decide was whether or not the lease in its present shape was delivered to the defendant, accepted by it and treated by the parties as a subsisting lease. Suffice to say, as to the given instructions, that they are too numerous and long to be transcribed, but we find no cause to criticise them. Those requested by the appellant and refused, either embodied defenses which ought not to have been recognized or were covered by the given instructions.

11. It is assigned for error that the court admitted in evidence the letter of March 15th, written by the Rutledge & Kilpatrick Company. The basis of this assignment is that Bakewell testified he inclosed the leases in an envelope with that letter and sent it either by mail or messenger; thus leaving it uncertain whether it went by mail or not, and as he did not testify that he properly addressed and stamped it there was no presumption that it was received. Whether the letter was competent or not, we have been unable to perceive wherein it could have been prejudicial. It speaks of the lease papers as inclosed; but the fact that the appellant got those papers is not disputed, and whether it got them with the letter or Becker got them at the office of the Rutledge & Kilpatrick Company, is of no consequence. It was a conceded fact that the alterations were inserted after their delivery and the essential question was as to the Edmund Realty Company's subsequent assent to the alterations. Appellant labored to show the contents of that letter were inconsistent with those of the letter of March 19th, in that both spoke of sending a bill for rent. The letter of the fifteenth speaks of the rent for the month of March, and that of the nineteenth of the rent for February. The court did not direct the jury to find the delivery of the lease papers was on March 15th, ''with this letter,'' and based on the pre-

sumptive delivery of the letter.    It merely stated the leases were sent with the request that they be signed and returned.    Certainly that was the purpose for which they were delivered to the appellant in whatever mode the delivery occurred.    In any aspect of the matter we can not see how the admission of the letter of March 15th did harm and decline to reverse the judgment on that account.

12.    It is said the court made comments during the trial in the hearing of the jury adverse to the interest of the defense.    No objection was made nor exception saved to any remark of the court.

13.    Complaint is made of the exclusion of the testimony of a witness by the name of Rettelack.    It was sought to prove by Rettelack that he was president of the mattress factory which occupied part of the premises of the Edmund Company, and that in March, 1902, there was no difficulty in securing insurance on the building on account of the mattress factory being in it.    That testimony was wholly irrelevant.    Rutledge swore he might have told Becker the insurance was cancelled on the building occupied by the mattress factory, but swore, too, that he did not refuse to deliver the leases on that account, as Becker said he did.    The only effect of Rettelack's testimony would have been to contradict Rutledge on an immaterial point.    It was properly excluded.

14.    The verdict as first returned assessed respondent's damages at $1.    The court refused to accept that verdict and the jury retired and brought in a second verdict fixing the damages at $900.    The jury plainly misapprehended the instruction in regard to the allowance of damages, for on no view of the evidence, could the respondent be entitled to only nominal damages. His recovery of damages, if he obtained a verdict, was bound to be the amount of the rent from May 1st, when possession was demanded, to the time of the verdict, and the court so directed.    The verdict was returned the

thirty-first day of October, six months from the demand for possession. As the value of the monthly rents was fixed at $150, respondent was entitled to $900. The error committed by the jury may be treated as an informality due to a misunderstanding of the law, and the court rightly afforded them an opportunity to correct it and thereby avoid the expense of another trial. Fathman v. Tumility, 34 Mo. App. 236; Long v. Talley, 91 Mo. 305; Warner v. Railway, 52 N. Y. 400; Goodman v. Appleton, 22 Mo. 458. The amount of damages first assessed was inconsistent with the finding that the value of the monthly rent was $150.

As the counsel in this case carefully prepared it for our consideration, we felt it incumbent on us to study attentively the various points raised against the propriety of the judgment, and have noticed them all, we believe, in the opinion.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.