[Civ. No. 3922. First Appellate District, Division Two.—September 22, 1921.]

JOSEPH LEVIN et al., Copartners, etc., Respondents, v. M. SAROFF et al., Appellants.

[1] LANDLORD AND TENANT—ESSENTIALS OF LEASE.—The only essentials of a valid lease are a definite agreement as to the extent and boundary of the property, a definite and agreed term and a definite and agreed price of rental and the time and manner of payment.

[2] ID.—NATURE OF INSTRUMENT—INTENTION OF PARTIES.—Whether an instrument is a lease *in praesenti* or an agreement to execute a lease in future is largely a question of the intention of the parties.

[3] ID. — AGREEMENT UPON ESSENTIALS — LATER CONTRACT — EFFECT OF.—Where the parties have agreed upon all essential facts there is a binding contract, notwithstanding that a more formal contract is to be prepared and signed, and when one party refuses to execute the lease according to the contract thus made, the other has a right to fall back on the written propositions as

originally made, and the absence of the formal agreement contemplated is not material.

[4] ID.—LOCATION OF PROPERTY—CERTAINTY.—An agreement for a lease is not too vague and uncertain to be specifically performed or to constitute an agreement of the parties because it fails to specify the city and state in which the property is located, where the lessee has gone into possession.

[5] ID.—REFUSAL TO EXECUTE LEASE — IMPOSITION OF DIFFERENT TERMS.—An agreement to execute a lease for a given period at a stated rental is not broken by a refusal to execute a lease which imposes terms and conditions not imposed by law and of which no mention is made in the agreement.

[6] APPEAL—UNLAWFUL DETAINER—PAYMENT OF MONEY JUDGMENT—EFFECT OF.—Payment of the money judgment in an action of unlawful detainer is not voluntary and does not deprive the appellant of the privilege of having his rights as to such part of the judgment determined, where the money was paid to save the property of the appellant from forced sale under execution and upon the assurance of his attorney that it could be recovered in the event of a reversal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Reversed.

The facts are stated in the opinion of the court.

Marcus D. Wolff and A. H. Crook for Appellants.

Edgar C. Levey for Respondents.

LANGDON, P. J.—This is an appeal by the defendants from a judgment against them in an action of unlawful detainer.

The plaintiffs' predecessor in interest made and executed the following contract with the defendant Saroff:

"This agreement made and entered into this 29th day of October, 1919, between M. Saroff, the party of the first part, and M. Levin & Sons, the parties of the second part,

"WITNESSETH: That whereas the parties of the second part are the owners of the certain buildings located on the north side of Folsom Street between Sixth and Seventh Streets, formerly occupied by them as 'Junk Dealers' and

whereas the party of the first part is desirous of leasing said premises, it is hereby agreed as follows:

"The party of the first part agrees to lease said premises for a term of five (5) years at a monthly rental of $250.00 and further agrees to pay the first four months' rent of said lease in advance.

"The party of the second part agrees to lease said premises to the party of the first part for the said term of five (5) years at the said monthly rental of $250.00, and further agrees that the said party of the first part has the option of releasing said property for an additional term of five years at the same monthly rental.

"The party of the second part further agrees to whitewash the entire interior of both the brick and corrugated iron buildings; enclose with sheet metal, or other material, the lower portion of the corrugated iron buildings; place openings for windows and doors where requested by said party of the first part; also to place windows in the second story of said corrugated iron building where requested by the party of the first part; also to place two toilets on 2nd floor and 1 toilet on 3rd floor of the brick building; the ground floor of the corrugated iron building to have cement floor with wood covering; 1 sink to be placed in 2nd and 3rd floors of brick building.

"It is further agreed and understood that the party of the second part will keep roof in repair and should corrugated iron rust said party of the second part will repair same, put elevator in condition that will be passed by the Elevator Inspector and do any and all work required by the Board of Health, Board of Public Works, or other authorities, in connection with building; but not with business of the party of the first part.

"It is further agreed and understood that the lot facing Russ St., running back to building will be included in the lease and any improvements placed thereon by said party of the first part will be removed at the termination of the lease.

"Said party of the first part is permitted to sublet any portion or all of said buildings for any purpose excepting the same shall not be leased for a junk business.

"Rent to commence fifteen (15) days after buildings are repaired and ready for occupancy. Party of the second

part will notify party of the first part when buildings are ready for occupancy.

"Party of the first part agrees to pay for all water, gas or electricity used in said buildings during the term of said lease or any extension thereof.

"Party of the second part reserves right to remove wagon scales at any time during lease and party of second part agrees to keep same in good order. Party of the first part agrees to keep in order and maintain buildings and elevator in repair during entire term of lease."

In accordance with this agreement, the plaintiffs made the repairs and alterations required thereby, and the defendant Saroff took possession of the premises and paid four months' rent in advance to the plaintiffs. The other defendant is a subtenant of Saroff. The defendants continued to occupy the premises and Saroff paid rent therefor, in advance, at the rate of $250 a month from about January 1, 1920, until July of the same year. During this period of time, the parties had some negotiations for the execution of a more formal lease in accordance with the terms of the agreement above quoted. The plaintiffs insisted upon defendant Saroff signing a formal lease embodying terms and conditions not contained in the more informal agreement, and which would not have been implied by law. Among such terms was one to the effect that the lessee waived his right to make repairs under the provisions of section 1942 of the Civil Code; that the premises should be sublet only to a responsible person; that the lessor is entitled to enter the premises personally or by representative for the purpose of viewing the same or of making alterations thereon; that the lessee will save the lessor harmless from any liability whatsoever by reason of any damage occurring to himself, his employees, servants or any person or persons in or about the said property from any cause or act whatsoever; that any increase in insurance rates upon the building due to the character of the lessee's business should be borne by the lessee. Also the lease submitted for defendant to sign did not contain a provision granting him an option to renew the lease for an additional five-year period. In compliance with this portion of the informal agreement, plaintiffs tendered to defendant a separate writing stating

that such option was granted to the defendant, *provided that written notice of his intention to avail himself of the option be given by registered letter duly mailed ninety days prior to the date of the expiration of said lease.*

Defendant Saroff refused to sign this lease submitted to him by the plaintiffs, insisting that it did not conform to his agreement. On July 19, 1920, plaintiffs notified the said defendant that because of his refusal to execute the lease submitted to him by plaintiffs' attorney, the agreement of October 29, 1919, herein set out, was rescinded and canceled and that his tenancy would thereafter be considered as one from month to month. On July 29, 1920, by written notice the monthly rental of said premises was raised to $500, commencing September 1, 1920. Defendant Saroff disregarded these notices and on September 1, 1920, offered to pay to plaintiffs the rental of $250 reserved in his agreement. This offer was refused. On September 2, 1920, plaintiffs served notice upon defendant to pay the rent within three days or vacate the premises. Upon his failure to comply therewith, this action was brought to recover possession of the premises and to recover rental at the rate of $500 a month from September 1, 1920. Plaintiffs recovered judgment for $1,500, representing rental for three months at $500 a month, and for possession of the premises.

Plaintiffs' theory of the case is that the agreement herein set out was an agreement to make a lease in the future and not a lease. It appears to us that the agreement contains all the essentials of a valid lease. **[1]** To create a valid lease, but few points of mutual agreement are necessary: First, there must be a definite agreement as to the extent and boundary of the property leased; second, a definite and agreed term; and, third, a definite and agreed price of rental, and the time and manner of payment. These appear to be the only essentials. (Jones on Landlord and Tenant, p. 170, sec. 137a; *Cochrane* v. *Justice Min. Co.,* 16 Colo. 415, [26 Pac. 780]; *Boston Clothing Co.* v. *Solberg,* 28 Wash. 262, [68 Pac. 715].) However, plaintiffs' contention is based upon testimony of an understanding between the parties that they were later to execute a more formal contract. **[2]** Whether an instrument is a lease *in praesenti* or an agreement to execute a lease in future

is largely a question of the intention of the parties. (*Jackson* v. *Kisselbrook,* 10 Johns. (N. Y.) 336, [6 Am. Dec. 341]; *Pacific Imp. Co.* v. *Jones,* 164 Cal. 260, [128 Pac. 404].) **[3]** Nevertheless, where the parties have agreed upon all essential facts there is a binding contract, notwithstanding the fact that a more formal contract is to be prepared and signed later. (Jones on Landlord and Tenant, *supra; Marcus* v. *Collins Bldg. & Const. Co.,* 27 Misc. Rep. 784, [57 N. Y. Supp. 737].) The mere fact that a written lease was in contemplation does not relieve either of the contracting parties from the responsibility of a contract which was already expressed in writing. When one party refuses to execute the lease according to the contract thus made, the other has a right to fall back on the written propositions as originally made, and the absence of the formal agreement contemplated is not material. (*Post* v. *Davis,* 7 Kan. App. 217, [52 Pac. 903]; *Bonnewell* v. *Jenkins,* L. R. 8 Ch. Div. 70, 74.) The evidence discloses that this is precisely what was done in the present case. The parties acted upon the agreement of October 29, 1919—the plaintiffs surrendering possession and making the repairs called for thereby, and the defendants taking possession and paying four months' rent in advance and the subsequent rent in advance each month as provided in the agreement. Later, the plaintiffs asked the defendant to execute a formal lease. He stated that he was willing to do so if plaintiffs would repair the elevator as provided in the agreement. This was done, and the negotiations regarding the formal lease were commenced. When the plaintiffs would not furnish a lease in accordance with the written agreement, the defendant submitted to them a lease of the premises drawn by his attorney, which contained all the provisions of the informal agreement and also most of the additional provisions embodied in the lease submitted by the plaintiffs. Plaintiffs, however, rejected this lease and the defendant then took the position that he would stand upon the agreement in writing which he had, and that such agreement was sufficient. He continued to offer to perform what was required of him thereunder.

In the case of *Cheney* v. *Newberry & Co.,* 67 Cal. 125, [7 Pac. 444], it is said: "The entry under the written contract for a lease for a stated term and at a stated

rent, and the payment and receipt of the rent, constituted a valid lease between the parties for the term and at the rental specified. Neither party could subsequently cancel the contract without the consent of the other.''

The situation in the present case is well stated in the language of *Pacific Improvement Co.* v. *Jones,* 164 Cal. 260, at page 264, [128 Pac. 404, 406], where it is said: ''Moreover, while the testimony tends to prove that the parties contemplated substituting for this instrument a more formal lease, nevertheless, the execution of the document, as shown by the uncontradicted testimony . . . was intended to conclude the lease between the parties, so that Mr. Jones could take immediate possession of the property, the contemplated execution of the formal lease being deemed a matter of mere convenience.''

[4] Respondents argue that the agreement for a lease is too vague and uncertain to be specifically performed or to constitute an agreement of the parties. This is urged because the agreement does not specify the city and state in which the property is located. This precise objection has been considered in the case of *Boston Clothing Co.* v. *Solberg, supra,* and at page 716 of the opinion (68 Pac.) the point is decided adversely to the contention of respondents. In the present case the agreement has been acted upon and the defendant has gone into the possession of the property and there can be no dispute about the location of the property involved.

[5] We reach the conclusion, therefore, that the defendant was not violating the written agreement between the parties when he refused to execute the lease submitted to him by the plaintiffs which contained other provisions. ''An agreement to execute a lease for a given period at a stated rental, payable in specific installments, is not broken by a refusal to execute a lease which imposes terms and conditions not imposed by law and of which no mention was made in the instrument. (24 Cyc. 899; *Sanders* v. *Pottlitzer Co.,* 144 N. Y. 209, [43 Am. St. Rep. 757, 29 L. R. A. 431, 39 N. E. 75].) It is clear, then, that the plaintiffs had no right to rescind and cancel the agreement under which the defendant was holding the premises; that such agreement was in full force and effect until superseded by a formal writing in accordance there-

with. The notices served by plaintiffs changing the tenancy to one from month to month and increasing the rent from $250 to $500 a month were unavailing and gave to plaintiffs no new rights, and the judgment in their favor for the added rental and for the possession of the premises was erroneous.

[6] One further matter requires a brief discussion. The record before us shows that the money judgment has been paid and satisfied. Respondents sought to avail themselves of this fact upon a motion to dismiss this appeal upon the ground that the judgment had been satisfied. Upon the hearing of the motion in this court a showing was made by respondents that appellants had voluntarily surrendered up possession of the premises. Whether the portion of the judgment relating to the possession of the premises was voluntarily complied with by appellants or not does not concern us here, because we are of the opinion that as to the money judgment, the payment and satisfaction thereof by the appellant Saroff was not such an one as to deprive him of his right of appeal with reference to that item, at least. (*Kenney* v. *Parks*, 120 Cal. 24, [52 Pac. 40]; *Warner Bros.* v. *Freud*, 131 Cal. 646, [82 Am. St. Rep. 400, 63 Pac. 1017].) The showing made by appellants in resisting the motion to dismiss the appeal was to the effect that after the entry of the judgment herein, supplementary proceedings were had and an order of examination issued. Upon the hearing thereof, Saroff appeared in court. In his desire to save his property from a forced sale under execution and upon the assurance by his attorney that he could recover his money in the event of a reversal of the judgment upon appeal, Saroff then and there satisfied the money judgment. Such a payment is not a voluntary payment and will not militate against appellant's privilege to have his rights determined upon appeal (*Warner Bros.* v. *Freud, supra*), and this court so determined in denying the respondents' motion to dismiss the appeal.

The judgment is reversed.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 21, 1921.

All the Justices concurred.