238 P.2d 695

**DANIELS et al. v. FARMER et al.**

**No. 7698.**

Supreme Court of Idaho.

Nov. 14, 1951.

Beckwith & Langley, Twin Falls, for appellants.

Everett M. Sweeley and O. P. Duvall, Twin Falls, for respondents.

GIVENS, Chief Justice.

In the spring of 1948, respondent Farmer owned two adjoining half sections of dry land previously uncultivated, only partly cleared, in the eastern part of Twin Falls County; irrigation water for which was being developed by wells on the property, then only sufficient to irrigate a small part of the land. Farmer began clearing, levelling, and working the land. Earl Watts and appellant Bob Dale Daniels, then a minor, carried on this work for respondent Farmer. Crops of various kinds were raised by Watts and Daniels during 1948 and a complete settlement relative thereto was made between the parties.

In August 1948 a written agreement, Exhibit A, was entered into as of date March 15, 1948 between Farmer, Watts and the younger Daniels as follows:

"This agreement made and entered into this 15th day of March, 1948, by and between Fred C. Farmer hereinafter called the first party and Earl Watts and Bob Dale Daniels hereinafter called the second parties,

"Witnesseth, that in consideration of the mutual covenants and agreements hereinafter set forth by each of said parties to be kept and performed it is agreed as follows:

"The first party agrees to furnish the East Half of Section Twenty two and the East Half of Section Twenty seven, Township Eleven South, Range Twenty E. B.M. Twin Falls County, Idaho, for the crop season of 1948 and to furnish irrigation water therefor from wells now on said premises or to be drilled.

"The first party agrees to furnish heavy equipment necessary to get the ground in condition for farming and to pay all charges for gasoline and oil used in operating said equipment, and to pay for three-fifths of potato seed and commercial fertilizer used on said premises during the crop season of 1948.

"The second parties agree to farm said premises in the manner of good husbandry for the crop season of 1948 and to furnish all necessary machinery for the production and harvesting of all crops.

"The second parties agree to cut and windrow or pile all beans grown during the 1948 season.

"The first party agrees to pay three-fifths and the second parties agree to pay two-fifths of combining or thrashing charges for all beans grown on the premises and the hauling thereof to market and for all potato digging, picking, bucking, sacking, sorting, storing, and hauling.

"Bob Dale Daniels agrees to labor on said premises during the crop season of 1948 and to devote his entire time to the cultivation, irrigation, production and harvesting of all crops grown thereon, and to receive for his services from the first party, in addition to the compensation mentioned in the following paragraph an amount of money equal to one-fourth of the first party's net profits from the sale of all Rye grown on said premises during the 1948 season.

"The second parties agree to accept as compensation for their services, in addition to the compensation provided for Bob Dale Daniels in the preceeding paragraph, two-fifths of all potatoes and beans grown on said premises during the 1948 season, it being understood that said two-fifths share is to be divided equally between Earl Watts and Bob Dale Daniels.

"The first party agrees to pay to the second parties as compensation for their services as afore said the amounts set out in the two preceeding paragraphs. The division of the beans and potatoes shall be made by the first party as soon after harvesting as is reasonably convenient and the first party shall pay to Bob Dale Daniels his shares of the proceeds from the sale of the Rye on or before the 1st day of December, 1948. It is understood that Earl Watts is not to receive any part of the Rye grown on said premises or any portion of the proceeds derived from the sale thereof.

"The first party agrees to pay to O. W. Daniels one fourth of his net profits from potatoes and beans grown during crop season of 1948 as compensation for services.

"The first party in consideration of the forgoing covenants and agreements hereby agrees to make, execute and deliver to the second parties on or before January 1, 1949, a lease of said premises for the term commencing January 1, 1949 and ending November 30, 1951. The said lease shall be drawn in the usual form common to Twin Falls County, Idaho, and shall provide among other things that the first party shall receive as rentals one-half of all

crops grown during each crop season including pasture and fall forage. The lease shall also provide that the lessor and lessees shall each furnish one-half of all seed and commercial fertilizers and shall contribute equally to the expense of combining or thrashing of grain and beans and to the harvesting of potatoes after they have been put on top of the ground by the lessees. The lease shall further provide that the lessees shall not sell, mortgage, or dispose of any of the crops grown on said premises until delivery has been made to the lessor of his share of said crops. In the event the second parties or either of them breach any covenant or agreement contained herein it shall be optional with the first party to declare this agreement terminated and all rights of the second parties to complete this agreement or to receive the lease herein provided for shall cease and determine."

In October of 1948 Watts and Bob Dale Daniels disced 110 acres of dry land and seeded it to rye and in the spring of 1949 disced and harrowed 70 acres in preparation for additional row crops.

April 12, 1949, Farmer sold part of the lands covered by the agreement to Leona M. Uezzell and served notice to quit and surrender the premises by April 15, 1949, on Watts, Bob Dale Daniels and his father, O. W. Daniels, and on May 7, a subsequent notice to them of the sale of the premises to Mrs. Uezzell. May 5, 1949, Mrs. Uezzell sent her hired man on to the land and

he worked six days plowing and levelling. The two Daniels thereupon, May 20, instituted this suit to enjoin respondents from interfering with their occupancy of the land, and farmed it in 1949 and raised various crops. May 10, 1949 Watts executed an assignment of all of his interests to O. W. Daniels. June 3, 1949, appellants secured an injunction restraining respondents from interfering with appellants' possession and use of the land in question.

The second and last amended complaint filed September 23, 1949, had attached to it copy of Exhibit A and this allegation: "That said agreement dated March 15, 1948, Exhibit A., constitutes and is a valid and existing lease of said real property therein described, for a term beginning January 1, 1949 and ending November 30, 1951, and plaintiffs are entitled to possession of all of said lands, as in said lease provided, until November 30, 1951, and entitled to have this Court require the defendants to specifically perform their part of said agreement and lease." And that Watts and the plaintiffs had performed all the covenants and conditions of the lease and asked that the agreement (Ex. A) be decreed a valid and existing lease on the property until November 30, 1951 and for specific performance thereof as a lease, and that plaintiffs be let into and maintained in peaceful possession.

Two answers were filed to this last complaint, so far as the essential and determinative issue of this controversy is con-

cerned, contending that the written agreement (Ex. A) constituted only a lease for the year 1948 and that the agreement did not constitute a lease, and no lease was entered into between the parties for subsequent years. The Court found:

"6. That at the time the defendant Farmer entered into the said written agreement with Watts and Daniels he had been for some years personally acquainted with the said Watts, was on friendly terms with him, had a high regard for his agricultural ability and experience and confidence in his industry, reliability and integrity, and entered into the said agreement because of, and only because of such relationship and confidence.

\*     \*     \*     \*     \*     \*

"9. That thereafter, and on or about May 20, 1949, the plaintiffs commenced this action in the Court above named, the plaintiff O. W. Daniels claiming under a purported assignment to him by the said Watts of his interest in and rights under the said written agreement, the said plaintiffs by their original complaint alleging and representing themselves to be tenants holding over under the terms of said agreement applicable to the year 1948, and by virtue of an order of temporary injunction made in this cause on or about June 3, 1949, and made upon the allegations and representations of said complaint and other papers in connection therewith, the plaintiffs entered into possession and control of the said lands of the defendants.

\*     \*     \*     \*  ·  \*     \*

"11. That on or about September 10, 1949, the plaintiffs filed herein their second amended complaint, from which there were eliminated any and all allegations relating to their previous claim of being tenants of said lands holding over under the terms of the said written agreement for 1948 operations, and instead thereof assumed and took the position that they were in and entitled to continue in possession and control of the said lands by reason of that part of said written agreement relating to a proposed lease of the said lands for the years 1949, 1950 and until November 30, 1951, claiming that said provisions in the written agreement constituted a valid and existing lease of said lands for the said period, and praying for a decree of specific performance of that part of the said agreement.

\*     \*     \*     \*     \*     \*

"12. That one of the provisions of the said written agreement relating to the years 1949, 1950 and 1951, is that the lease proposed therein should be drawn in the usual form common to Twin Falls County, Idaho, and should provide for, among other things, certain matters set forth. That plaintiffs have not alleged in their second amended complaint, and upon the trial have not offered any proof of what constitutes such usual form of lease, or as to the matters to be included within the expression of other things on which the minds of the parties had met, if there were any such."

And concluded that the written instrument constituted a lease for the year 1948

**72**

only; that because of lack of timely notice to quit, appellants were entitled to hold possession for the crop season of 1949; that the written agreement, by reason of personal dependence of Farmer upon Watts, was not assignable without Farmer's consent, and that the written agreement did not constitute a lease for 1949, 1950 and 1951; and that respondents were entitled to possession of the land.

Appellants make numerous assignments of error, but thus define and refine the consequent sole issue before the Court: "The essence of this law suit is the written agreement dated March 15, 1948, between the parties admitted in evidence as Exhibit A, * * *. The question to be answered: Is the agreement a valid lease for a term beginning March 15, 1948, and ending November 30, 1951, or is it a lease terminating with the end of the 1948 crop season? * * * All other issues are auxiliary." And it is further restricted in their brief on petition for rehearing thus: "It is the intention of the parties at the time of the date of the agreement, March 15, 1948, which controls, * * *." and further urge: "* * * any testimony by the appellants or respondents as to the intention of the parties in making the agreement would be incompetent because it would alter, change and detract from the terms of the written agreement, Exhibit A, which is not in any sense ambiguous as to its terms and conditions. The agreement is a single contract and appellants entered into possession

thereunder and remained in possession under the agreement until the commencement of this action on May 20, 1949."

■ The agreement on the face of it leased the property for 1948 only, with a specific provision that a lease would be drawn later to cover the extended period.

"The fact that the parties contemplate executing in the future a formal lease does not, of course, prevent the agreement itself being a lease if such was the intention of the parties, as clearly manifest by the facts. On the other hand, dependent upon the facts, of course, such a provision for the execution of the lease in the future may be some evidence that the parties did not by the agreement then and there intend a present demise of the premises." United States v. 257.654 Acres of Land, etc., D.C., 72 F.Supp. 903 at page 920. To the same effect, see Bean v. Katsilometes, 50 Idaho 485, 298 P. 363, and Linnard v. Sonnenschein, 94 Cal.App. 729, 272 P. 315.

The nine paragraphs in the agreement, preceding the provision presaging the subsequent making of a lease, pertain exclusively to the year 1948. The next to the last paragraph in the agreement, therefore, must contain the necessary essentials of a lease between appellants and respondent Farmer for the extended period beginning January 1, 1949 and ending November 30, 1951, if we confine our determination of the case to the agreement alone, as appellants contend we must.

[2, 3] Such portion of the agreement is insufficient to constitute a lease for the extended period because it lacks mutuality of obligation in that it does not bind appellants to lease the premises. Moody v. Crane, 34 Idaho 103 at page 120, 199 P. 652; Hart v. Turner, 39 Idaho 50, 226 P. 282. Such mutuality must exist at the inception of the agreement; Sherman v. Watson, 58 Idaho 451 at page 455, 74 P.2d 181.

Appellants urge that the deferments in the paragraph under consideration were held in Morgan v. Firestone Tire & Rubber Company, 68 Idaho 506, 201 P.2d 976, 980, to not be material as preventing the instrument from being a lease and could be supplied. It will be noted, however, the Court in that case was construing a contract of sale in connection with which and as a concomitant part thereof was a contemporaneous agreement to lease:

"The contract is entire. For a single money consideration the purchaser was buying property and 'as an inducement' to him 'to purchase this property and as *a part of the consideration therefor*' the seller agreed to lease the property. (Emphasis added.)" Double emphasis ours.

"Further, the lease should 'be entered into contemporaneously with the passing of title'. This made the covenants for purchase and sale and for leasing dependent." 68 Idaho at page 514, 201 P.2d at page 980, supra.

That the entire instrument was to be considered as a whole and that mutuality of obligation thereby existed from the inception, the Court saying:

"In July, 1943, appellant, a married man, contemplating an investment with community funds, and the Firestone Tire and Rubber Company (Ohio corporation), desiring *to dispose of its business real estate in Pocatello but retain possession and use of the same by lease for a period of years,* entered into the following agreement (being the latter's standard form but deletion and italics ours), without appellant's wife joining therein:

"'The Firestone Tire & Rubber Company, an Ohio Corporation, hereby agrees to sell, and The Undersigned hereby agrees to purchase the following described real estate, as described herein, in fee simple, on the terms stated below, conveyance to be made by warranty deed: * * *.'"

The trial court herein concluded possession of the land by appellants during 1949 was justified by respondents' failure to give notice to surrender possession within sixty days of the close of the 1948 crop season, and that appellants were holding over under a provision of the agreement of 1948 as to that year, not as under the said paragraph of the agreement as constituting a subsequent lease. Possession of such character and in such manner is insufficient as a substitute for an essential provision obligating appellants to lease for subsequent years. Browder v. Phinney, 37 Wash. 70, 79 P. 598 at page 600; Collins v. Lackey, 31 Okl. 776, 123 P. 1118 at page 1120, 40

L.R.A.,N.S., 883; Owens v. Moraine, 105 Okl. 285, 232 P. 818 at page 819–820; McCourtie v. Bayton, 159 Wash. 418, 294 P. 238 at page 240. (Landlord and tenant.)

While some of the above authorities were in connection with the statute of frauds, the essential point involved is what character of possession, where a written instrument by its terms does not bind a purchaser or as herein, a lessee, to buy or lease, will in effect take the place of such omission in the written agreement and bind the lessee so as to confer the right of specific performance—hence the authorities are in point, pertinent and controlling.

Possession to be of effect must be with the consent of the owner. Quayle v. Stone, 43 Idaho 306 at page 308, 251 P. 630.

The paragraph of the agreement upon which appellants must rely does not obligate appellants to lease the premises, Hechinger v. Dinkler Hotel Co., 34 Ga.App. 798, 132 S.E. 113; Galbreath v. Thayer, 147 Miss. 556, 113 So. 180, 53 A.L.R. 288, nor specify when the rent is to be paid, and there is no provision as to the payment of taxes, maintenance or repair, or return of the premises in as good condition as when leased, occupational and ordinary wear and tear excepted. All of these were enumerated as essential terms in the Morgan v. Firestone case, supra.

Even if we look to the provisions specifically made applicable to 1948, they do not supply these missing essentials.

The trial Court's conclusion that the written agreement did not constitute a lease for the years 1949, 1950 and 1951 was, therefore, correct. Brothers v. Arave, 67 Idaho 171, 174 P.2d 202.

This disposition of the case renders it unnecessary to consider any other points involved, which we expressly refrain from further considering or deciding.

The decree dismissing appellants' second amended complaint with costs to respondents is affirmed. Costs herein to respondents.

PORTER and TAYLOR, JJ., concur.

THOMAS, Justice (dissenting).

The essential facts in this case are set forth in the majority opinion and it would serve no useful purpose to restate them herein.

Respondents' theory of the case is that the agreement was an agreement to make a lease in the future and was not a present demise. Appellants contend that it is a present demise.

But few points of mutual agreement are necessary to create a valid and binding lease; it must be complete and certain as to the parties, the description of the property, the term and the rental payments, and the time and manner of payment. All of these essential terms were set forth in the agreement, none of them left in doubt nor left open for any future negotiation. Mor-

gan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976; Gaskill v. Jacobs, 38 Idaho 795, 225 P. 499; Cappelmann v. Young, 73 Cal.App.2d 49, 165 P.2d 950; Levin v. Saroff, 54 Cal.App. 285, 201 P. 961; Young v. Neill, 190 Or. 161, 220 P. 2d 89, 225 P.2d 66; Gavina v. Smith, 25 Cal.2d 501, 154 P.2d 681; King v. Stanley, 32 Cal.2d 584, 197 P.2d 321.

Even though the commencement of the term was in the future, that fact does not prevent the instrument operating as a present demise. Williams v. Belling, 76 Cal. App. 610, 245 P. 455; 51 C.J.S., Landlord and Tenant, § 215, p. 820.

It is true that in order to render such an instrument a lease as distinguished from an agreement or contract to lease it should contain words which import a present demise; however no particular words are necessary to so effectuate the instrument as a present demise. The terms "agreement to lease", "agree to let", "agrees to rent" and "would lease and farm let", and similar phrases have been held to effectuate a present demise; 51 C.J.S., Landlord And Tenant, § 185(c), p. 787, and this is so even though a further writing or memorandum was called for in the document; Ver Steeg v. Becker-Moore Paint Co., 106 Mo.App. 257, 80 S.W. 346; the test apparently applied is that if the agreement in which any such words are used leaves nothing incomplete, it may operate as a present lease and demise.

The instrument and agreement under consideration, while not using any of these particular words, uses words of similar import and futhermore provides specifically for all the material, essential and necessary terms of a valid and existing lease.

It is largely a question of the intention of the parties as to whether an instrument is a present demise or an agreement to execute a lease in the future; however, where the parties have agreed upon all essential facts there is strong persuasive indication of a binding contract even though a more formal contract is to be prepared and executed subsequently.

The mere fact that a formal written lease was in contemplation of the parties does not relieve either of them from the responsibility of the agreement which was already set forth in writing and was sufficient in and of itself to constitute an existing lease. In such a situation should one party refuse to execute the lease according to the agreement made, as the appellants did here, the other party has a right to fall back on the written propositions as originally made; the absence of the more formal agreement which was contemplated is not material. Levin v. Saroff, supra, and the cases therein cited.

The parties involved in this litigation, as disclosed by the evidence, acted under the agreement which was reduced to writing and possession of the property was given to and held by the appellants, who did not

in any respect violate any of the terms, covenants or conditions of the instrument; the respondents herein did not furnish a formal lease to the appellants in accordance with such agreement but, to the contrary, on the very unusual grounds set forth in the notices served upon the appellants, in effect asked that they vacate the property because of undue and unexpected financial hardships on the part of the respondents and for the further reason that respondents had sold the property; this constitutes a refusal to execute a formal lease; the appellants did not yield possession of the property after receipt of such notices, but took the position that they could fall back upon the agreement and that it was sufficient; this they could rightfully do even though they might have been initially mistaken as to the legal tenor and effect of the agreement.

The fact that the instrument provides that the lease shall be drawn in the usual form common to Twin Falls County and shall also provide "among other things" (certain terms and conditions therein specifically set forth) does not alter the rule that an instrument which contains the names of the parties, the description of the property, the term and the rental payments, and the time and manner of payment, constitutes a lease for the reason that the words "in the usual form common to Twin Falls County, Idaho" and "shall provide among other things", add nothing; neither is necessary to complete the lease and there is nothing in the instrument to disclose that the parties thereto had any other or further particular matters in mind which had to be agreed upon at some future date before the agreement could become effective. Morgan v. Firestone Tire & Rubber Co., supra; Gaskill v. Jacobs, supra.

If a lease such as the instrument before this court contains, as it does, the necessary and essential elements but is silent with reference to any of the general, usual and ordinary covenants and conditions of such an instrument, they will be implied and specific performance decreed. Morgan v. Firestone Tire & Rubber Co., supra; 49 Am.Jur., Sec. 121, p. 143, and the cases therein cited; Janssen v. Davis, 219 Cal. 783, 29 P.2d 196; Scholtz v. Northwestern Mutual Life Ins. Co., 8 Cir., 100 F. 573.

In the light of the pronouncements hereinabove set forth, the agreement is not ambiguous to the extent that it is necessary to attempt to ascertain the intention of the parties by resort to anything other than the instrument itself. Morgan v. Firestone Tire & Rubber Co., supra; Levin v. Saroff, supra.

That the instrument only should be examined and construed as a whole to ascertain the intent of the parties is manifest. This is aptly set forth in the case of King v. Stanley, supra, 197 P.2d on page 326, in the following language: "The mere state of mind of the parties is not the object of inquiry. The terms of the contract are determinable by an external, not by an in-

ternal standard—or by what has been termed the objective rather than the subjective test. (Citing cases.) Measured by any reasonable standard there is here mutual assent to a contract which is sufficiently certain so that the court was within its power in decreeing specific performance." (Citing cases.)

While an intent existed to reduce the informal instrument before this court, to a more formal written lease, however the existence of such an intent does not necessarily prevent a binding obligation from arising even though the formal contract contemplated was never executed. Gavina v. Smith, supra; unless it should also appear that the parties further agreed and intended not to be bound until a formal written contract containing all the essentials was executed. Patch v. Anderson, 66 Cal.App. 2d 63, 151 P.2d 644. In this case it does not appear from the record that the parties agreed or intended not to be bound until such formal lease was executed, but to the contrary the agreement constituted a present demise even though it was not reduced to a more formal writing at a later date, because none of the essential terms were left to future determination.

The decree of the court below should be reversed and the cause remanded with instructions to make findings of fact, conclusions of law and decree in accordance with this dissenting opinion. Such decree should grant specific performance of the contract in accordance with its specific terms, dis-

regarding the provisions to the effect that such lease "shall be drawn in the usual form common to Twin Falls County" and provide "among other things".

I am authorized to say that Justice KEETON concurs in this dissent.