[Civ. No. 17704. First Dist., Div. One. Oct. 2, 1958.]

HARRY SMISSAERT, Appellant, v. LOUIS F. CHIODO et al., Respondents.

*Assigned by Chairman of Judicial Council.

828

Ernest I. Spiegl for Appellant.

Lewis P. May, Andrew P. Costelli and Russell W. Feder-spiel for Respondents.

BRAY, J.—In this appeal by plaintiff from an adverse judgment in an action (1) for specific performance, or, in the alternative, damages, and (2) for declaratory relief, plaintiff raises many questions which, however, become moot if the trial court's finding to the effect that there was no final contract between the parties is supported. This question, in turn, depends upon whether the purported contract shows on its face that it was not intended to be a final contract.

## THE UNDISPUTED FACTS

Defendant Chiodo Candy Company, a corporation, owns the property in question. To raise additional capital it decided to offer the real property for sale subject to a lease back

to it. In May, 1955, defendant Louis Chiodo, president, director and general manager of the company, admittedly acting with authority, employed real estate brokers McLean and Korematsu to sell the property. The sale price, which included "equipment and chattels as per inventory to come," was $550,000, all cash or "Cash and trade acceptable to Seller." "No sale shall be made unless the Seller completes a satisfactory lease back . . . on terms and conditions acceptable to Seller." The brokers called in a third broker, Jacobson, to help find a purchaser. Jacobson brought the property to plaintiff's attention. Plaintiff gave Jacobson a written offer dated June 16, 1955, in the form of a standard deposit receipt. In it Jacobson, "agent," acknowledged receipt from plaintiff of $2,500 as a deposit on account of the purchase price of $250,000 for the real property alone, balance to be paid within 60 days from date of acceptance by seller. "This offer is subject to a *net net net* lease for a period of twenty-five (25) years by sellers at a *net net* rent of $27,500.00 per annum . . ." (Emphasis added.) The lease was to be secured by a chattel mortgage on personal property used in the operation of the plant. "This offer is subject to satisfactory financing to be obtained by the purchaser at his own cost, effort and expense." It was stipulated that Jacobson was plaintiff's agent for the purpose of submitting the offer. Plaintiff gave Jacobson a $2,500 check payable to California Pacific Title Company as a deposit. Jacobson retained the check and still retains it. He testified that it is customary on sales of industrial property for the broker to retain the deposit check until the offer is accepted. It is then placed in escrow with the seller's escrow instructions.

Before Chiodo accepted the offer the following addendum was attached to it: "It is further mutually understood and agreed by and between the parties to this agreement that the validity of said proposed agreement is subject and conditioned upon the parties agreeing upon and reducing to writing all terms and conditions necessary and incidental to the validity of said proposed agreement; and that seller shall pay a total real estate commission of 5% upon completion of said sale." Plaintiff signed the addendum. Thereafter negotiations between the parties continued in relation to the price for the property and the security for the lease. A higher price with a correspondingly higher rent was suggested, as well as a cash deposit or bond in lieu of the chattel mortgage since there al-

830

ready was a chattel mortgage on the plant equipment. Eventually Chiodo notified plaintiff that the property was being taken off the market. Plaintiff notified defendants that he was ready, able and willing to complete the purchase, and then filed suit.

## WAS THERE A FINAL CONTRACT?

The court found that the deposit receipt was not intended by the parties to be an expression of the meeting of their minds and was but one step in negotiations which ultimately failed; that the receipt is not sufficiently definite or certain to be capable of specific performance, and that it does not specify all the terms of the lease and chattel mortgage which the parties thereto intended be established before either party would be obligated; that its terms are not shown by the evidence to be capable of being established by custom or by reference to any other document. These findings are supported (1) by the document itself, and (2) by the fact that if the receipt does not show on its face that it was not final, then it is ambiguous, parol evidence was admissible to explain it, and such evidence although it might support conclusions to the contrary, fully supports the court's conclusions.

## THE RECEIPT ITSELF

It provides that the offer is subject to a "net net net" lease and that the "validity of said proposed agreement is subject and conditioned upon the parties agreeing upon and reducing to writing all terms and conditions necessary and incidental to the validity of said proposed agreement . . ." ■ Whether a writing constitutes a final agreement or merely an agreement to make an agreement depends primarily upon the intention of the parties. In the absence of ambiguity this must be determined by a construction of the instrument taken as a whole. (See *Pacific Improvement Co.* v. *Jones* (1912), 164 Cal. 260, 263 [128 P. 404]; *Gavina* v. *Smith*, 25 Cal.2d 501, 503 [154 P.2d 681].) ■ Where all of the essential terms of an agreement are definitely agreed upon in the writing there is a binding contract even though there is an intention that a formal writing will be executed later. (See *Pacific Improvement Co.* v. *Jones, supra*; *Gavina* v. *King, supra.*) ■ The intent of the parties is to be determined by an objective standard and not by the unexpressed state of mind of the parties. (*King* v. *Stanley* (1948), 32 Cal.2d 584, 591 [197 P.2d 321].) ■ Where any of the terms are left for future determination or there is a manifest intention that the formal

agreement is not to be complete until reduced to a formal writing to be executed, there is no binding contract until this is done. (*Store Properties, Inc.* v. *Neal* (1945), 72 Cal.App. 2d 112, 116 [164 P.2d 38].)

█ Having in mind these rules, the receipt, were it not for the addendum, probably shows mutual assent to all the essential elements necessary for a valid contract.* There are primarily three parts to the agreement, namely, purchase and sale of real property, lease back and chattel mortgage. The portion dealing with the real property contained all the necessary elements. (See *King* v. *Stanley, supra*, 32 Cal.2d 584.) The portion dealing with the lease, with the exception of the "net net net" and "net net" references probably embodied the essential terms of a lease as prescribed in *Levin* v. *Saroff*, 54 Cal.App. 285, 289 [201 P. 961].†

As to the "net net" references, we will assume for the moment that they were well understood terms. The portion dealing with the chattel mortgage contains the names of the proposed mortgagor and mortgagee, the description of the property to be mortgaged and a description of the obligation secured (the performance of the lease by lessee). This probably was a sufficient description of the proposed mortgage. (See Civ. Code, § 2956; 10 Cal.Jur.2d § 20, p. 296.) Therefore, if the addendum shows no more than an intent to further reduce the informal writing to a more formal one, there may have been a binding agreement and plaintiff might have been entitled, if not to specific performance, to damages. However, in construing the receipt and the addendum as a whole (and they are but one document) it appears that it was not intended to be and was not a binding agreement. It is only necessary to quote the language of the addendum to show that the parties intended and agreed not to be bound until a formal written contract was executed. It states ". . . the *validity* of said *proposed* agreement is subject and conditioned

---

*It did not set forth all the incidental matters which necessarily would have been included in the final document.

†As to the above mentioned references, plaintiff contends that the third "net" was merely a clerical error, and that the parties understood that "net net" meant that the tenant pays rent plus taxes, insurance and maintenance. But the Bank of America representative testified it is a common term. Defendants' auditor testified that prior to the signing of the receipt by defendant Chiodo broker McLean explained to Chiodo that the term was used in standard real estate practice and meant as contended by plaintiff. On the other hand, the auditor stated that broker Korematsu, in the same conversation, told Chiodo that he thought the term did not include maintenance.

upon the parties *agreeing upon and reducing to writing all terms and conditions necessary and incidental* to the *validity* of said *proposed* agreement . . .'' (Emphasis added.) Plaintiff contends that the word ''validity'' was used to mean not repugnant to some statute or public policy rather than to mean not binding. However, this narrow meaning is contrary to the general meaning. Webster's New Collegiate Dictionary (2d ed.) defines ''valid'' as ''Founded on truth or fact; capable of being justified, supported, or defended; well-grounded; sound. Efficient; effective. Having legal strength or force.'' Black's Law Dictionary (4th ed.) states: ''Having legal strength or force, executed with proper formalities, incapable of being rightfully overthrown or set aside. Of binding force; legally sufficient or efficacious; authorized by law. Good or sufficient in point of law; sustainable and effective in law, as distinguished from that which exists or took place in fact or appearance, but has not the requisites to enable it to be recognized and enforced by law.'' It would seem, therefore, that the use of the term plainly indicates that the agreement was not to be legally effective. And ''all terms and conditions necessary and incidental'' which were to be reduced to writing clearly shows that it was intended that a formal contract had to be executed before the parties became bound. Even though the informal agreement might have contained all the essential elements of a contract, the addendum conditioned validity on a formal document which would contain all the incidental terms.

The terms of the addendum showing that regardless of what had been agreed upon in the receipt, there was to be no binding agreement until the later agreement was agreed upon and reduced to writing, distinguishes this case from those like *Pacific Improvement Co.* v. *Jones, supra,* 164 Cal. 260, *Fly* v. *Cline,* 49 Cal.App. 414 [193 P. 615]; *Levin* v. *Saroff, supra,* 54 Cal.App. 285, and *Gavina* v. *Smith, supra,* 25 Cal.2d 501, cited by plaintiff and which held that the mere fact that a formal writing was to follow, did not make the first agreement not binding where in it all essential terms had been agreed upon. Here it was expressly provided that the agreement could not be binding until even the ''incidental'' matters which the courts have held need not in the absence of such an agreement be inserted in the first writing, were agreed upon.

As the agreement in the absence of explanation shows that it was not intended to be the complete agreement of the parties, we deem it unnecessary to consider the claimed errors in the

admission of evidence to explain the agreement except to say that most of the evidence now objected to was either brought out by plaintiff or not objected to by him.

Again, as there was no agreement it is unnecessary to determine whether the court's findings on the following subjects were supported: (1) that broker Jacobson was plaintiff's agent alone; (2) that no escrow was opened; (3) that plaintiff was not ready, able and willing to perform; (4) that there was a lack of mutuality; (5) findings on the question of damages including the finding that defendants did not act in bad faith.

The judgment is affirmed.

Peters, P. J., and St. Clair, J. pro tem.,* concurred.

A petition for a rehearing was denied October 31, 1958.

*Assigned by Chairman of Judicial Council.