In re POSTLE ENTERPRISES, INC., an Arizona corporation, Debtor.

Clayton J. DEAN, et al., Movants,

v.

POSTLE ENTERPRISES, INC., an Arizona corporation, Respondent.

Bankruptcy No. B–84–1152–PHX–GBN.

United States Bankruptcy Court, D. Arizona.

May 6, 1985.

Dawn Stoll, Gust, Rosenfeld, Divelbess & Henderson, Phoenix, Ariz., for movants.

Edwin A. Hiner, Hiner, Crowe & Scott, Phoenix, Ariz., for debtor.

## MEMORANDUM OF DECISION

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

This contested matter presents the issue whether 11 U.S.C. §§ 365(c)(2) and (e)(2)(B) cover unexpired leases and, if so, whether an agreement which would require a landlord post-petition to provide up to $150,-000.00 in construction allowances to a debtor-tenant can be construed to be a contract to make a loan, extend debt financing or financial accommodations within the meaning of those statutory provisions.

Because both questions should be answered in the affirmative, the debtor's motion to assume the lease is denied and the landlord will be permitted to move to reclaim the leased premises.

On January 25, 1984, lessor Clayton J. Dean, et al. ("movant, lessor") and Postle Enterprises, Inc. ("debtor, tenant") entered into a lease of commercial property located in Phoenix, Arizona. The premises include a structure designed for operation as a motion picture theater, known as the Bethany Theater.

Lease terms provided for operation of the premises to allow retail and concession sales of food and alcoholic beverages, installation and operation of electronic games, and exhibition of audio or visual presentations in addition to motion pictures. Docket Item A–21, ¶ 6, at 6–7. In reliance on the agreement, debtor obtained both a liquor license and franchise from Cinema 'N Drafthouse, Inc., a guarantor of debtor's lease obligations. *Supra*, at Exhibit C.

Paragraph 7 of the lease has assumed importance in connection with the parties' subsequent dispute. That clause provides generally that the premises would be remodeled by a contractor acceptable to lessor-movant, who was to receive plans, specifications and a cost breakdown. § 7(a), Docket A–21, at 7–9. By letter dated April 12, 1984, lessor declared the lease null and void for failure to commence construction within the requisite 60 days. *Supra*, at 8; Docket A–8, Exhibit D. A forcible detainer was instituted against Postle in Maricopa County Superior Court on April 27, 1984. A.R.S. § 12–1171, *et seq.* This voluntary Chapter 11 petition was instituted on May 3, 1984. The next day lessor-movant filed a motion for relief from the automatic stay. 11 U.S.C. § 362(d). Debtor responded with a request for authorization to assume the pre-petition lease. 11 U.S.C. § 365(a). Following a June 6 hearing, I lifted the stay only to allow movant to conclude the Superior Court action. This procedure was instituted to test lessor's argument the lease was validly terminated pre-petition and accordingly unassumable on that basis. *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1212, 1214 (7th Cir.1984); *In re Bricker*, 43 B.R. 344, 347–48 (Bankr.Ariz.1984). The state court found debtor not guilty of forcible detainer on September 26, 1984 and awarded fees and costs.

Following this adverse ruling, movants responded to debtor's request to assume the lease by arguing, *inter alia*, the lease cannot be assumed as a matter of law as "a contract to make a loan or other debt financing or financial accommodations to or for the benefit of the debtor...." 11 U.S.C. § 365(c)(2).

A similar provision is found in § 365(e)(2)(B), which validates the enforceability of contracts terminating or modifying rights based on a subsequent bankruptcy filing, again if the agreement is "to make a loan, or extend other debt financing or financial accommodations, to ... the debtor." Normally, of course, a provision which terminates or modifies rights or duties solely because of a party's subsequent bankruptcy is not enforceable. 11 U.S.C. § 365(e)(1). The landlord argues that both §§ 365(c)(2) and (e)(2)(B) are implicated due to express lease provisions.

Section 16(e) of the agreement provides, *inter alia*, that a bankruptcy petition by or against lessee pending for 60 days provides grounds for termination of the leasehold. Docket A–21, at 30.

Lease § 7b obligates lessor to provide up to $150,000.00 for structural improvements including, *inter alia,* repair of the roof, exterior walls, parking lot, electrical and plumbing work. Docket A–21, at 9–10. This work, identified as *lessor's* improvements, is limited to permanent improvements contained in plans and specifications approved by the landlord. It was contemplated movant would contract with one or more lenders for interim or permanent financing to provide the funds for such construction. *Supra,* at 10.

Debtor argues this agreement is not a financial accommodation under § 365 as the improvements pass to movant after termination of the tenancy. Nor are interest, finance or repayment terms stated for such allowance. Instead, the parties apparently intended movants would recover their expenditures through received rents and the permanent value added by the improvements.

Debtor further argues this financial accommodation issue need not be resolved, due to its construction of the relevant statutes. Although §§ 365(c) and (e)(2) speak in terms of executory contracts and unexpired leases, the specific sections relied upon by movants refer solely to "such contracts." 11 U.S.C. § 365(c)(2); § 365(e)(2)(B). Thus, there is no specific mention of leases in these subsections, despite the general reference in the immediately preceding provisions. There is different as well as similar treatment afforded executory contracts and unexpired leases throughout § 365. *Cf.* §§ 365(b)(3), (4); (c)(3); (d)(3), (4); (h)(1); (*l*) and (m), dealing with leases; §§ 365(i), (j), dealing with executory contracts. Certainly Congress knew how to draft subsections of § 365 to clearly indicate applicability to both contracts and leases. §§ 365(a); (b)(1); (c)(1); (d)(1), (2); (e)(1), (f); (g) and (k). One commentator reads the legislative history as indicating the § 365(c)(2) bar for assuming financial accommodations excludes leases. Baker, *The Automatic Stay in Bankruptcy: An Analysis of the Braniff Chapter 11 Proceeding,* 14 Texas Tech.L.Rev. 433, 447 (1983). The *Braniff* court refused to

rule on the § 365(c)(2) issue, however. *Supra,* at 447–48 and n. 100.

Contrary to the learned commentator, I do not find the legislative history manifests unmistakable intent to exclude leases from § 365(c)(2):

Section 365(c)(2) and (3) likewise present a compromise between H.R. 8200 as passed by the House and the Senate amendment. Section 365(c)(2) is derived from section 365(b)(4) of the Senate amendment but does not apply to a contract to deliber equipment as provded in the Senate amendment. As contained in the House amendment, the provision prohibits a trustee or debtor in possession from assuming or assigning an executory contract of the debtor to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or the issuance of a security of the debtor.

Section 365(e) is a refinement of comparable provisions contained in the House bill and Senate amendment. Sections 365(e)(1) and (2)(A) restate section 365(e) of H.R. 8200 as passed by the House. Section 365(e)(2)(B) expands the section to permit termination of an executory contract or unexpired lease of the debtor if such contract is a contract to make a loan, or extent other debt financing or financial accommodations, to or for the benefit of the debtor, or for the issuance of a security of the debtor.

Characterization of contracts to make a loan, or extend other debt financing or financial accommodations, is limited to the extension of cash or a line of credit and is not intended to embrace ordinary leases or contracts to provide goods or services with payments to be made-over time.

124 Cong.Rec. H 11093 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards), reprinted in 9 Brk.L.Ed., Legislative History § 81.3, at 24 (1979). *See* H.Rep. No. 95–595, at 348, U.S.Code Cong. & Admin.News 1978 pp. 5787, 6304;

Subsection (c) prohibits the trustee from assuming or assigning a contract or lease if applicable nonbankruptcy law excuses the other party from performance to someone other than the debtor, unless the other party consents. This prohibition applies only in the situation in which applicable law excuses the other party from performance independent of any restrictive language in the contract or lease itself. The purpose of this subsection, at least in part, is to prevent the trustee from requiring new advances of money or other property. The section permits the trustee to continue to use and pay for property already advanced, but is not designed to permit the trustee to demand new loans or additional transfers of property under lease commitments.

Thus, under this provision, contracts such as loan commitments and letters of credit are nonassignable, and may not be assumed by the trustee.

Reprinted in Brk.L.Ed., Legislative History, *supra*, § 82:16, at 358.

█ Clearly, the reference to "such contracts" in §§ 365(c) and (e) contemplates executory contracts. *In re Continental Experts Enterprises*, 26 B.R. 308, 309 (Bankr.S.D.Fla.1982) (executory contract to provide construction enabling loan unassumable under § 365(c)(2)); *In re New Town Mall*, 17 B.R. 326, 5 C.B.C.2d 1530, 1532–34 (Bankr.D.S.D.1982) (loan commitment unassumable under § 365(c)(2) and terminable under § 365(e)(2)(B)). Does the term "such contracts" encompass leases as well?

Neither party has located dispositive cases on this point.

Collier can be read to indicate § 365(e)(2) applies to both contracts and leases:

The wording of section 365(e)(2) is perhaps unnecessarily broad and suggests that a bankruptcy termination clause might be asserted against a debtor in possession when the contract is one for personal services, although it seems clear that the intent was to permit termination only where substituted performance would occur.

The reason for this apparently unnecessary repetition is to make it clear that not only may a commitment to lend money not be assumed or assigned but that the obligations of the other party may be terminated and the obligation to pay accelerated. Presumably the automatic stay of section 362, which prohibits a creditor from terminating or accelerating after the petition, will not apply to these special kinds of contracts or leases.

2 *Collier on Bankruptcy* § 365.06[1], at 365–44 (15th ed. 1985). No independent support is cited for this opinion, however. *See also* 2 Bkr.L.Ed., Code Commentary and Analysis § 15:104 (1983), at 239: "The section permits the trustee to continue to use and pay for property already advanced, but is not designed to permit the trustee to demand new loans or additional transfers of property under lease commitments." (Citing legislative history).

I believe unexpired leases are cognizable under subsections (c)(2) and (e)(2)(B). First, an ordinary lease is usually viewed as a contract containing executory elements on one or both sides. 6 *Williston on Contracts* § 890, at 580–86 (3d ed. 1962). Accordingly, a broad reading of "such contract" could include a lease. Second, the placement of § 365(c) and (e) subsections modify the flush language of immediately prior sections which specifically refer to both executory contracts and unexpired leases. Third, the purpose of the exclusion "is to make it clear that a party to a transaction which is based upon the financial strength of a debtor should not be required to extend new credit to the debtor whether in the form of loans, lease financing, or the purchase or discount of notes." Senate Rep. No. 95–989, 95th Cong., 2nd Sess. 58–9 (1978), reprinted in 1978 U.S. Code, Cong. & Admin.News 5844–45.[1] No reason is given why Congress would protect contract parties from making a loan or

1. The reference in the Senate Report to § 365(b)(4) should be to subsection c. 1985

Collier Pamphlet Edition, Bankruptcy Code, § 365, at 177.

financial accommodation to a debtor without extending similar protection for parties to a lease. If anything, the Code, both as originally enacted and as amended in 1984, evidences intent that special protections be afforded the nondebtor in a lease transaction. *See, e.g.*, 11 U.S.C. § 365(b)(3) (providing special protections to shopping center lessors; § 365(c)(3) (prohibiting assumption or assignment of terminated nonresidential leases).

Accordingly, it is evident the assumability bar of § 365(c)(2) and termination provisions of § 365(e)(2)(B) apply to unexpired leases as well as executory contracts.

It then becomes necessary to determine if the lease, structured with an advance of $150,000, constitutes an agreement to make a loan, extend debt financing or other financial accommodations within the meaning of the subsections. Unfortunately the terms "loan, debt financing" or "financial accommodations" are not defined. *See In re Adana Mortgage Bankers*, 12 B.R. 977, 986 (Bankr.N.D.Ga.1980) (construing § 365(e)(2)(B)).

Thus, the Code provides instruction on what to do if a provision is construed to be a financial accommodation, not whether the transaction constitutes such accommodation in the first instance. In determining the issue, it might be useful to determine who reaps the benefits of the funding allowance.

On the surface, clearly the lessor gains, as all financed improvements are to be permanent additions to its building and retained after the leasehold terminates. Docket A–21, at 10. Such funding is not among the normal elements of a lease, however:

> To create a valid lease, but few points of mutual agreement are necessary: First, there must be a definite agreement as to the extent and boundary of the property lease; second, a definite and agreed term; and, third, a definite and agreed price of rental, and the time and manner of payment.

*Williston, supra*, at 584, citing *Levin v. Saroff*, 54 Cal.App. 285, 201 P. 961, 963 (1921).

Besides going beyond the elements of an "ordinary lease," the funding agreement permits debtor to demand post-filing, a $150,000 cash transfer, rather than simply provide payment for property or services already advanced. Cong.Rec., *supra*, at H 11093; H.Rep., *supra*, at 348.

■ The parties contemplated that the landlord would be required to borrow the necessary funds to finance construction from a lender or lenders. Docket A–21, at 10. Debtor-tenant thus benefits by not having to finance the structural improvements itself, but instead have movant incur the lender's fees, charges and interest. Some of the remodeling may be required because of lessee's desire to convert the premises from a presently existing motion picture theater to some type of combined bar or dinner theater operation. Such conversion may or may not meet with success. If unsuccessful, there is no showing movant could attract another tenant without again remodeling the structure from a dinner theater configuration. The end result of the funding clause is to require a major financial investment from the lessor for improvements which most immediately benefit the debtor. Clearly, the original $150,000 commitment contemplated sufficient financial strength of the tenant to allow the venture to succeed. Enactment of §§ 365(c)(2) and (e)(2)(B) evidences Congressional recognition that a subsequent bankruptcy casts a distinct pall over the success probability of a tenant. To that end, the non-debtor is not required to perform contracts involving financial accommodations, loans or debt financing. This is such a case. Accordingly, the lease is not assumable as a matter of law. 11 U.S.C. § 362(c)(2). Debtor's motion to assume the lease has been denied. The automatic stay is now lifted to allow movant to resort to appropriate procedures to regain possession of its property as property of the debtor. 11 U.S.C. § 362(d).

ORDERED ACCORDINGLY.